Mastin v. Stoller.

107 317
133 650

MASTIN, *Executrix*, et al., *Appellants*, v. STOLLER *et al.*

DIVISION ONE.

1. **Contract of Sale :** CONSTRUCTION: INTENTION. The first rule of construction of a contract of sale, wherein there is any ambiguity, is to ascertain the intention of the parties as expressed in their language.

2. **Sale of Assets of Assigned Estate :** DESCRIPTION OF PROPERTY : CONSTRUCTION OF PETITION. A petition for the sale of assets of an assigned estate prayed that "all claims and demands" of the estate might be sold, as well as those particularly mentioned in an accompanying exhibit; but the orders of court thereon, and, later, in respect to a report of the subsequent sale, are *held*, in this case, to limit the transfer of title by the sale to the property specially named in the petition and exhibit.

3. ———: JUDICIAL ACTION, PRESUMPTION AS TO. A sale of undescribed demands of an assigned estate would be contrary to the proper course of judicial action, and, hence, will not be presumed to have been intended when the orders of court do not expressly provide for such a sale.

4. **Courts and Other Public Officers, Construction of Acts of.** When the acts of a court or other public officer are reasonably susceptible to a construction in harmony with correct legal principles, that construction will be adopted.

*Appeal from Jackson Circuit Court.*—Hon. T. A. Gill, Judge.

Affirmed.

Action by plaintiff upon a claim for money paid, by a statutory assignee, upon a judgment against the estate in his hands, the judgment having been afterwards reversed upon appeal ; finding for defendant ; present appeal by plaintiff.

The facts, on which the case is made to turn in the opinion of the court, appear from the pleadings and plaintiff's evidence to be these :  The Mastin Bank of Kansas City made a general statutory assignment for the benefit of its creditors, August 3, 1878, to Mr. Kersey Coates, who accepted the trust.  In March, 1880, Messrs. Stoller and Hill ( the defendants in this action ), began a suit against Mr. Coates to impress a trust, in their favor, upon certain funds in his hands as assignee.

Issues were joined in that suit, with the result that a finding and decree for $3,303.60 finally passed for Stoller and Hill against the assigned estate, January 7, 1882, with an order upon Mr. Coates, assignee, for payment thereof, accordingly.  The latter moved for a new trial, unsuccessfully, and then took an appeal to the supreme court without giving the bond necessary to stay proceedings on the judgment.  Thereafter, February 3, 1882, the assignee paid to Stoller and Hill, upon their demand, $3,307.91 in pursuance of the decree mentioned.  At the April term, 1882, Mr. Coates, as assignee, reported to the circuit court, in his account of the condition of the estate, that the judgment or decree of Stoller and Hill had been paid, stating the figures thereof.  The decree against the assignee was later (in 1886) reversed by the supreme court for the reasons stated in the report of the case in 83 Mo. 514.

Meanwhile, after the payment of the decree as indicated, pending the appeal, Mr. Coates as assignee, filed

Mastin v. Stoller.

a petition in the circuit court, in the matter of the assigned estate, praying an order of sale of the then undisposed of assets, for reasons fully stated. To the application was annexed, as "Exhibit A," a detailed statement "as nearly accurate as can be at present made, of all the assets now remaining in the hands of the assignee." But, beyond that, it declared (after stating a number of particulars of the condition of the estate), that "there may be some other assets belonging to the assigned estate, not specially described in the annexed statement; and if so they are to be deemed as included in this petition, the same as though mentioned in said statement."

The "Exhibit A" was a very voluminous document, embracing specific items to the nominal amount of over one million of dollars, among them a number of judgments and claims in litigation against various parties named. The description of these items was quite full. The following are quoted to illustrate the mode of statement employed:

| DATE. | NAME. | DESCRIPTION. | AMOUNT. |
|---|---|---|---|
| April 18, '81 | Payne, W. W. | Judgment, Cir. Ct. K. C. Case No. 1143. | $ 238 87 |
|  | Price, John | Note Judgment, Apr. 18, '81. Case No. 1133. | 78 00 |
| Oct. 10, '79 | Payne, M. J. | Judgment, Cir. Ct. K. C. Case No. 2551. | 7,496 42 |
|  | Powers, D. B. | Note in suit, Case No. 303. | 5,003 73 |
| Dec. 18, '75 | Powers, D. B. | Check in suit, Cir. Ct. Case No. 303. | 20 00 |

Upon consideration of the assignee's petition, due notice, etc., the court made an order of sale which (in so far as it relates to this controversy) directed that said assignee sell certain realty, and "all other assets and claims belonging to said trust estate held by him as such assignee including all debts owing or due to him as such assignee, except only cash or money in hand," etc., for not less than $275,000, cash. The order further stipulated that the assignee might, at

his option, "sell all of the real estate in gross, or may sell the same in separate parcels, and may sell all other assets, claims and debts to be sold, in gross or in separate parcels, provided the sale shall realize not less than $35,000 for real estate, and not less than $240,000 for other assets and said interests on said horse railroad bonds. * * * No sale shall be valid or give any right to the purchasers until after due report of sale, and of proceedings in that regard made and approved by the court, and nothing done by the assignee in the premises, under this order, shall be final until approved thereof by the court. * * * Reference is here made to said application filed March 31, 1884, including the list and statement, for description of said property and assets to be sold."

The assignee, April 17, 1884, reported to the court a sale of the land and "all other assets, debts and property to be sold," according to the order of the court, for the price of $275,000 and certain interests on bonds, "all subject to approval or rejection by said court, reference being made to said order and application therefor, for particular description of the property sold; price to be paid in cash after approval of the sale and on conveyance and assignment of the property."

This report of sale was approved, April 26, 1884, upon condition that certain suits should be dismissed, and the further condition that, as there were pending in various courts different suits, some by, and some against, the assignee, said Coates should be fully indemnified to his satisfaction by the purchaser, against "all costs, expenses and liabilities therein for which he has become or may hereafter, in the course of the litigation, become bound to pay, so that he cannot individually lose anything by reason thereof."

The order then continues, to the effect that, upon payment of the price agreed, the assignee should, by proper instrument, convey to the purchaser all the

assets and choses in action sold ; and as far as practi-
cable deliver the same or evidences thereof to the
purchaser, "all without recourse," etc.

It then closes thus : "5. Subject to the terms and
conditions. aforesaid, said sale shall be executed as
speedily as practical, (and,) in order to have record
evidence of the property so sold and all that has been
done in the premises, the clerk shall record herewith,
in full, the application herein filed, March 31, 1884,
and the report of sale filed, April 17, 1884, both as.
follows, to-wit:"

Here is then set forth the report of sale and the
petition therefor, with the contents of "Exhibit A,"
already mentioned, in full.

The assignee, thereupon, in compliance with the
terms of sale, formally conveyed to the purchaser "all
the property and assets of said trust remaining in
his hands" under the proceedings above described,
and "all of the assets and property, real, personal and
mixed, of the Mastin Bank, of every nature and
description and wheresoever situate, which was assigned
to said Coates by the deed of assignment of August 3,
1878, remaining in his hands, except, however, the
cash on hand."

The purchaser from the assignee, shortly thereafter,
conveyed the subject-matter of the purchase to John J.
Mastin.   The latter brought this action against Stoller
and Hill to recover the sum paid in 1882, by Mr.
Coates, assignee, upon the decree in their favor, after
its reversal by the supreme court.

Mr. Mastin died during the pendency of this case,
and the plaintiff now is his legal representative.

After hearing all the evidence, the trial court
declared the law to be that plaintiff could not recover,
and found for defendants.

All other necessary facts appear in the opinion of
the court.

*Karnes, Holmes & Krauthoff* for appellants.

(1) The rule is conclusively settled that, on the reversal of a judgment, an action lies to recover the amount which has been paid or collected ·under it. *Green v. Stone*, 1 Har. & J. 405; *Clark v. Pinney*, 6 ·Cowen, 297; *Close v. Stewart*, 4 Wend. 95; *Sturges v. Alles*, 10 Wend. 354; *Maghee v. Kellogg*, 24 Wend. 32; *Garr v. Martin*, 20 N. Y. 306; *Glover v. Foster*, 7 Blackf. 293; *Martin v. Woodruff*, 2 Ind. 237; *Metzner ·v. Bauer*, 98 Ind. 425; *Bank v.·Neal*, 4 Cranch, C. C. ·627; *Stevens v. Fitch*, 11 Met. 248; *Duncan v. Ware*, 5 .Stew. & Port. 119; *Crocker & Clements*, 23 Ala. 296; *Raun v. Reynolds*, 18 Cal. 275; *Clayes v. White*, 83 Ill. 540; *Crispen v. Hannovan*, 86 Mo. 160. The principles which ordinarily govern payments voluntarily ·made have no application here. When the judgment was rendered, the defendant was under a duty to pay. He lost none of his rights by making such payment. ·*Clark·v. Pinney*, 6 Cowen, 297; *Williams v. Simmons*, 22 Ala. 425; *McJullon v. Love*, 13 Ill. 486. "It is not necessary in order to maintain the action that the payment should have been coerced by execution. It is ·sufficient if it was paid after judgment or adjudication made." *Scholey v. Halsey*, 72 N. Y. 578; *Lott v. ·Swezey*, 29 Barb. 87; *Crane v. Runey*, 26 Fed. Rep. 15; 2 Wheat. Cont., sec. 740. (2) The proceedings under which Coates sold the assets of the Mastin Bank ·to Karnes clearly indicate an intent to transfer every item of the same. To now deny the comprehensive ·effect manifestly intended would be grossly unjust. *Wright v. Parks*, 10 Iowa, 342; *Ullman v. Kline*, 87 :Ill. 268. The court gave abundant opportunity for ·objections to the proposition to be submitted and finally ordered its acceptance. The terms of the order ·were as broad as the petition.

Mastin v. Stoller.

*Gage, Ladd & Small* and *L. C. Slavens* for respondent.

(1) Money paid on a judgment afterwards reversed was formerly recovered by writ of restitution, and is still so recovered in some jurisdictions. "This writ is not a writ of mere right, but *ex gratia*, resting in a sound discretion, and the courts will not issue it where the justice of the case does not call for it, or where the judgment was set aside for a mere slip." If the judgment was voluntarily paid and the original claim was justly, though not legally, due, the writ will not issue. *Gould v. McFall*, 12 Atl. Rep. 336, and cases cited. (2) But money so paid, if recoverable at all, can also be recovered in an action for money had and received, which, however, is governed by the same liberal principles that governed the issue of the writ of restitution, for which it is a substitute. "This action has always been looked upon as an equitable one, and it lies only where defendant ought *ex equo et bono* to refund the money which he has received; for where there has been no deceit or unfair practice, and he may in good conscience retain it, he cannot be compelled to pay it back." It is sufficient if he was morally though not legally entitled to it. *Deysher v. Triebel*, 64 Pa. St. 386; 4 Wait's Actions & Defenses, Tit. money received, p. 469, *et seq.*, sec. 25; *Crane v. Runey*, 26 Fed. Rep. 16; *Stewart v. Connor*, 9 Ala. 803; *Dupuy v. Roebuck*, 7 Ala. 484; *Duncan v. Ware*, 5 Stew. & Port. (Ala.) 119; *Green v. Stone*, 1 Har. & J. 405. (3) One creditor of an insolvent, who has in good faith received a preference of an honest debt under an assignment, may retain the money though the preference is afterwards declared void, and the other creditors receive less in consequence thereof. An honest creditor, who honestly receives payment of an honest debt, is entitled in good conscience to retain it, though he

could not have recovered it in the first instance. *During's Appeal*, 13 Pa. St. 225; *Carson v. McFarland*, 2 Rawle, 118; *Green v. Stone*, 1 Har. & J. 405; *Savings Institution v. Linder*, 74 Pa. St. 372; *Espy v. Allison*, 9 Watts. 465; *Boas v. Updegrow*, 9 Pa. St. 516. (4) When this assignment was made the defendants, Stoller and Hill, did not stand on a simple equality with the other creditors of the bank. *Stoller v. Coates*, 88 Mo. 515. (5) But whether defendants were originally entitled to a preference or not, the money paid to them cannot be recovered back, because they had, and still have, a just and valid claim against the assigned estate of an equal amount. *Ruby v. Watson*, 22 Mo. App. 433; *Smith v. Spengler*, 83 Mo. 408; *Coates v. Ridenour*, 84 Mo. 257. (6) There was not simply a voluntary payment and satisfaction of the judgment without even any demand, but a compromise and settlement thereof founded upon a valuable and sufficient consideration. (7) The judgment enforcing the preference was not only paid and settled but the claim of defendants allowed by the assignee against the general assets was reported canceled and discharged by the assignee, and the report was confirmed by the court and ever afterwards acquiesced in by all parties interested. The defendants were thus barred from further participation in the proceeds, dividends or management of the assigned estate.

BARCLAY, J.—It will not be necessary to enter into consideration of all the interesting questions started by our brethren at the bar in this case. One will, probably, suffice for the purposes of this appeal.

Did plaintiff, through the proceedings for the sale of the assets of the assigned estate, acquire title to the claim (if any there be) of that estate or of its assignee, against Stoller and Hill, the defendants? We think not.

This opinion rests upon our construction of the assignee's application, his report of the sale and the orders of the court thereon, the substance of which appears in the statement of the facts.

To ascertain the subject-matter of a sale, where the language used to describe it is, in anywise, ambiguous, the first inquiry usually should be into the intention of the contracting parties as it may be spelled out of the verbal forms they have employed to express it. If this intent is clear, it is generally unnecessary to resort to more uncertain rules of interpretation.

In the case at bar, the assignee's application for the sale undoubtedly used terms broad enough to embrace all claims and demands of the estate whether specially described in the annexed bill of particulars ("Exhibit A") or not. But the order of the court thereon referred to the application and exhibit "for a description," while the report of the sale cited the former for a "particular description" of the property sold, and the order confirming it, directed the clerk to spread the application, with the exhibit, and report of sale, at large, upon the records "in order to have record evidence of the property so sold."

The sale was expressly subject to the action of the court. The transfer by the assignee to the purchaser followed the above-mentioned order of confirmation, and must be taken to have been accepted in subordination to its terms.

These records make it clear that, whatever may have been the scope or purpose of the original application, the court did not sanction, or its orders contemplate, a transfer of any claim, or property of the estate, other than the property and claims particularly described in the application and the exhibit therewith.

Nowhere in that exhibit, or in the application, or in any part of the proceedings relating to the sale of the assets, was any express mention made of this claim, or of any claim against Stoller and Hill on any account

whatsoever.   We hence consider that it did not pass by the assignee's sale.

This view of the case makes it unnecessary to inquire how far the rule *noscitur a sociis* would bar the passage of title to this particular claim by that sale, insisted by defendants' counsel.

If the meaning of the circuit court, in the particular indicated, were fairly open to question, we should consider it proper to interpret its action as above stated, if the facts in any aspect would reasonably sustain such interpretation.   It is always proper to resolve such a doubt in favor of the correct and legitimate action of a court or other official whose proceedings are called in question, when such a resolution of it can reasonably and justly be made.

The object of such a sale, as was contemplated by the order of court in the matter of this assigned estate, was to secure the best possible price for the property. To obtain that, by bringing into competition all who might wish to buy, it was obviously necessary that some notice should be given of the subject-matter to be disposed of, at least sufficiently definite to enable an intending purchaser to know, generally, what was offered.   It would manifestly be no attraction or inducement to the public to offer all the undisposed of assets of an estate, without any indication whatever of their amount or nature.   We do not say that such an order would be void, for that issue is not before us; but we think it would be so clearly contrary to the proper and reasonable course of judicial action in the premises that we would not assume it had been taken where a fair reading of the record permitted any other construction.

Here we not only think a different construction possible, but are satisfied that a careful review of the orders of court, in question, reveals a clearly defined purpose to submit to sale only the property of which a

"particular description" had been furnished. This was the correct course in the circumstances.

It follows that the judgment should be affirmed. It is so ordered, with the concurrence of all the judges of this division, except BLACK, J., who did not take part.