State ex rel. Church v. Weeks.

STATE *ex rel.* JOSEPH CHURCH, Relator and Appellant, v. JOHN M. WEEKS *et al.,* Respondents.

Kansas City Court of Appeals, December 2, 1889.

*Rehearing denied, January 6, 1890.*

1. **Local Option :** PETITION FOR ELECTION: RULE OF CONSTRUCTION. When two petitions, while differing somewhat in the form of expression, can be construed to mean but one and the same thing, to-wit : To induce a city council to order an election to determine whether or not spirituous and intoxicating liquors should be sold in the city, if the two together are signed by one-tenth of the qualified voters of the city, they will sufficiently meet the requirements of the statute to justify the making of the order for the election. This court, in passing on the sufficiency of proceedings, under the local option statute, will not invoke the application of the strict rules of construction by which are usually tested proceedings for the condemnations of private property for public use.

State ex rel. Church v. Weeks.

2. **Definitions:** CITY COUNCIL. The words "city council" used in both the petition for the order and in the order itself imply *ex vi termini* that the council exercised legislative functions.

3. **Local Option:** ORDER FOR ELECTION SHOWING REQUISITE NUMBER OF PETITIONERS. Where it is an admitted fact that one-tenth of the qualified voters did sign the petition for the election, it is not essential that the city council, in the order for the election, should specially and affirmatively find that one-tenth of such voters did so sign, especially when said order does recite that said matter was referred to a committee for determination, which reported that said petition was so signed.

4. ———: NOTICE OF ELECTION: DISCRETION OF COUNCIL. If the notice of the election complies with the requirements of the third section of the act by being published in some newspaper in the county for four consecutive weeks, it will be sufficient, though the council fail to give other notice, as "other notice" is, by the statute, discretionary with the council; and this, too, even though an ordinance of the city may require a certain special proclamation of the mayor as notice of any municipal election.

5. ———: NOTICE OF RESULT OF ELECTION: REASONABLE TIME. As the statute does not provide within what time after the election notice of its result shall be given, it is presumed that a reasonable time is intended, which must depend upon the peculiar facts and circumstances of the case,—not in the record here, and this court cannot say the notice was not given within a reasonable time, nor that the delay would serve to defeat the election. *Quære:* Whether or not the operation of the statute was not kept in suspension until the commencement of the publication of the notice.

6. ———: DRAMSHOP LICENSE. Where the local option law has been legally adopted it is an operative prohibition upon the authority of county courts to issue dramshop license.

*Appeal from the Jasper Circuit Court.*—HON. M. G. McGREGOR, Judge.

AFFIRMED.

*T. B. Haughawout,* for the appellant.

(1) The council of the city had no authority to order the election, as it is admitted in the case that there was not sufficient number of voters signed either one of the two petitions upon which the order was

made, and the petitions were dissimilar in every respect. (2) The local option law requires one petition, and not two; the petitions being different—one calling for an election under the local option law, the other to vote on a question of license. Acts, 1887, sec. 1, p. 180. (3) The notice calling the election is not sufficient, as it does not purport to be the act of the body having legislative functions of the city, and the local option law requires the election to be ordered by such body, and the notice calling the election should be a certified copy of the order of the council. Acts, 1887, sec. 2, p. 180. *McPike v. Penn*, 51 Mo. 63. (4) The city council did not order the election held in conformity with the laws of said city governing municipal elections therein. *McPike v. Penn*, 51 Mo. 63. (5) The city council, before ordering the election, did not find that the petition was signed by one in ten of the qualified voters of said city, as required by said section 2 of the local option law; they only found by taking the two petitions together that the petitions were signed by the required number as provided by law. The record should affirmatively state the facts, as found, as said facts are jurisdictioned. *Jefferson Co. v. Cowan*, 54 Mo. 234; *Shell v. Leland*, 45 Mo. 298; *Smith v. Haworth*, 59 Mo. 88; *Whitney v. Platt Co.*, 73 Mo. 30; *Zimmerman v. Snowden*, 88 Mo. 217. (6) All the perquisites to the ordering for a special election must be complied with and the record must show a compliance or the council has no jurisdiction to order the election, and the proceedings are void. See above cited authority. (8) The notice of the results of the election introduced by respondents is not sufficient, as it does not purport to be the action of the "municipal body ordering the election." Neither did the council that published the last notice have any authority to publish the same, being seven months after the election, and not being composed of the same members that canvassed and declared the results of said election.

No brief for the respondents.

SMITH, P. J.—This is a proceeding by *mandamus* brought by the relator against the respondents, who are justices of the county court of Jasper county, to compel them in their quality as such justices to grant him a license to keep a dramshop in the city of Carthage. The return of the respondents pleaded as reasons why they should not be compelled to grant said license to the relator: (1) That the act of the general assembly of the state entitled "an act to provide for the preventing of the evils of intemperance by local option in any county in this state, and in cities of twenty-five hundred inhabitants, or more, by submitting the question of prohibiting the sale of intoxicating liquors to the qualified voters of such county or city; to provide penalties for violations and for other purposes," approved, April 5, 1887, had been put in force in the city of Carthage by a proper and legal election, and (2) that the relator had been convicted and was then indicted for selling liquor in violation of law.

The replication controverted the respondents' return, except that it admitted that relator had been convicted, and still stood indicted, for selling liquor as charged in said return.

At the trial there was offered in evidence a petition, signed by one hundred and seven persons, representing themselves to be taxpayers, addressed to the council of the city of Carthage, praying it to order an election to be held in said city, to determine whether or not spirituous liquors should be sold within the limits of the city of Carthage, as provided by the act of April 5, 1887.

Also, a further petition, directed to the mayor and said council of said city, in which "the undersigned legal voters of said city hereby petition your honorable body to order an election in said city for the purpose of ascertaining the wishes of the qualified voters of said

city upon the question of granting dramshop licenses,"
which had thereon one hundred signers. It was
admitted at the trial that it was upon the foregoing
petition that the council acted in ordering said election
—that, if both of the said petitions were taken
together and considered as the petition that then "the
requisite number of names were signed as required by
law," but that neither one of said petitions had thereto
signed one tenth of the qualified voters of the city.

The order of the council on the said petitions "was
that an election be held for the purpose set forth in
said petition on Friday, the second day of September,
1887," and "that the notices of said election be pub-
lished as required by law in each of the newspapers of
the said city." The order appointed the judges and
clerks of election, and designated the places of voting
in each ward of the city.

The notice published in pursuance of such order
was as follows :

"NOTICE OF ELECTION, UNDER THE LOCAL OPTION LAW.

"Notice is hereby given to the qualified voters of
the city of Carthage, that the city council of said city
has ordered a special election to be held in said city, on
Friday, the second day of September, 1887, to determine
whether or not spirituous or intoxicating liquors shall
be sold within the limits of said city of Carthage.
Said election shall be held in said city, on the said day,
in accordance with the provisions of an act of the
general assembly of the state of Missouri, entitled,
'An act to provide for the preventing of the evils of
intemperance by local option in any county in this
state, and in cities of twenty-five hundred inhabitants,
or more, by submitting the question of prohibiting the
sale of intoxicating liquors, to the qualified voters of
such county.'" The above notice was only published

for four weeks in all the weekly newspapers published in said city, as appeared by proofs thereof.

The certificate of the mayor and clerk of said city was introduced in evidence, which showed that, on the fifth day of September, 1887, they canvassed the returns of said election held by the people on the second day of September, 1887. They set forth therein the vote cast in each ward for and against the adoption of the law, and certified that a majority of three hundred and fifty-four votes were cast against the sale of intoxicating liquors in said city. On the eighth day of September, 1887, the result thus ascertained was officially announced by the following notice, which was published for four consecutive weeks:

"OFFICIAL NOTICE OF THE RESULT OF ELECTION HELD UNDER THE LOCAL OPTION LAW IN THE CITY OF CARTHAGE, MISSOURI.

"STATE OF MISSOURI,  ⎫
   "County of Jasper,   ⎬ ss.
   "City of Carthage.   ⎭

" We hereby certify that, at the election held in the city of Carthage, Missouri, on the second day of September, 1887, under the local option law, passed and approved, April 5, 1887, a majority of the votes cast were against the sale of intoxicating liquors in said city.

                         "J. W. SENNET, Mayor.
   " Attest:   T. M. GARLAND, City Clerk.
   " Carthage, Missouri, September 8, 1887."

No further steps seem to have been taken by the council in respect to the matter until April 5, 1889, when it made an order reciting that it appeared from the abstract of the election returns of the special election held September 2, 1887, in the city, etc., "that the majority against the sale of intoxicating liquors is three hundred and fifty-four votes; it is, therefore, ordered

by the council that notice of the result of said election be published according to law for four consecutive weeks in the same newspapers in which said notice of election was published. The notice was publishing when this proceeding was begun. An ordinance of the city of Carthage, which was in force during the year 1887, was introduced in evidence, and which provided that: The mayor shall, under his bond, at least two weeks previous to any municipal election, give notice of such election by proclamation published in the official paper of the city and by at least fifty printed hand-bills, posted in conspicuous places within the limits of said city, which proclamation shall designate the several places of voting of each precinct and the judges and clerks appointed thereto, as determined upon and selected by the city council.''

The circuit court refused the peremptory writ of *mandamus* and rendered judgment accordingly, and from which relator prosecuted his appeal.

I.    The first ground urged by relator for the reversal of the judgment is that the petitions presented to the city council were insufficient to confer jurisdiction to order the election under the local option statute, since neither one of said petitions had signed thereto the names of one-tenth of the qualified voters of said city. These two petitions, while differing somewhat in the form of expression, can be construed to mean but one and the same thing. One expressly asks the council to order an election to determine whether or not spirituous and intoxicating liquors should be sold in the limits of said city, whilst the other asks it " to order an election in said city, for the purpose of ascertaining the wishes of the qualified voters of said city upon the question of granting dramshop licenses.''

It is manifest from the very language employed that the common purpose of the signers of these petitions was to induce the city council to order an election to determine whether or not spirituous and intoxicating liquors

should be sold in said city. The signers of both of the petitions asked that the council would afford the qualified voters of the city an opportunity to express by ballot their will in respect to the liquor traffic at an election to be held for that purpose. The petitions were not dissimilar and whether the names of the signers all appeared on one or on two petitions would be immaterial if the language employed in each of them showed, as was the case, that the petitioners desired the accomplishment of the same object. The difference between these petitions is the old difference between "tweedledee and tweedledum." We must think the petition of the legal voters even in this form sufficiently met the requirements of the statute—any other construction would be both narrow and illiberal.

The council could have no jurisdiction to order an election under the local option statute without at least one-tenth of the qualified voters should petition it to make the order. If it appeared by the petition of the requisite number of the qualified voters that such was their will, that fact would authorize the exercise of the jurisdiction no difference what the form of the petition may be. If every petitioner had separately petitioned the council for this purpose it could hardly have been justified in denying their petition because all the petitioners had not signed their names together on one paper.

When proceedings under the local option statute are drawn in question as for sufficiency we are not disposed to invoke the application of the strict rules of construction by which are usually tested proceedings for the condemnation of private property for public use. We are disposed to think the petitions should be considered as "the petition," and when thus taken the requirements of the statute are sufficiently complied with to justify the making of the order for the election.

II. The order for the election upon its face sufficiently shows that the city council was a body exercising legislative functions. The word "council" is

derived from the latin word "*consilium*," the definition of which is an "assembly." Hence the word council, as used and employed in statutes, is usually understood to mean the legislative body in the government of cities or boroughs. 1 Bouvier's Law Dict. 410. So that the words "the city council," used in both the petitions for the order, and in the order itself, imply *ex vi termini* that the council exercised legislative functions.

III. It is objected further that the city council in ordering the election did not find that the petition was signed by one in ten of the qualified voters of the city as required by section two of the local option statute. It stands admitted that the fact was that the one-tenth of the qualified voters of the city did sign the petition for said election, but it is insisted that the order does not affirmatively show the fact, and it is void for that reason.

We are not disposed, as has already been intimated, to apply to the proceedings of a body exercising legislative functions the same rules of strict construction made applicable to judicial proceedings to condemn private property for public use.

Hence that class of cases, of which *Zimmerman v. Snowden*, 88 Mo. 217, is a type, do not apply in all their broadness to a case like this. Besides the order shows that the council appointed a committee to ascertain whether the petition, upon which it was made, had been signed by one-tenth of the qualified voters of the city, and that the committee reported the fact that it was so signed. No doubt the report of the committee which is not preserved in the bill of exceptions showed the number of qualified voters in the city and the number that had signed the petition. The report of the committee as the order recites showed amongst other things that the number of qualified voters required by statute had signed the petition. The unpreserved report of the committee we are bound to presume showed the number of qualified voters in the city and the number who had signed the petition.

And we take it that, even under the rules of strict construction laid down in 88 Mo., *supra*, and kindred cases that it would be sufficient if "*these jurisdictional facts appeared somewhere in the proceedings.*" If they appear in the report of the committee, which we presume is the case, that is part of the proceeding and would be sufficient to obviate the difficulty which relator suggests. But it has already been stated we think that the order, independent of considerations of this kind, is sufficient and not open to the assault made upon it. This would be so under a liberal and reasonable construction of the local option statute which we think it should receive.

IV. We are inclined to think the notice of the special election ordered by the council in form and substance is sufficient. The fourth section of the local option law directs that the notice shall state the time when the election shall be held, and beyond this the matter of notice is relegated to the municipal authorities.

But it is contended that the order of the city council for the election is invalid, because the same did not in any way exact the requirement provided in the said city ordinance which has been already quoted. We do not think this omission fatal to the validity of the order.

The third section of the local option statute provides that the notice of the election shall be by publication in some newspaper published in the county, and such notice shall be for four consecutive weeks, and the last insertion shall be within ten days next before such election, *and such other notice may be given as the county court or municipal body ordering such election may think proper in order to give general publicity of the election.*"

It is observed that it is left by this section discretionary with the municipal body, whether it will or not order "other notice" to be given of the election. This is not a mandatory requirement upon the municipal

body by the terms of the statute. An order for a special election under this statute is an independent one in respect to notice, except in so far as the municipal council may choose to make it conform to other and existing regulations provided by ordinance in relation to the giving of notice of elections. The ordinance in other words does not apply to such election unless it had been made to do so by the order for the election.

V. It is contended that since the council did not give notice of the result of said local option election within time required by the fifth section of the statute that this fact rendered the election ineffectual.

The statute does not direct within what time after the election the publication of the notice shall begin. It is presumed that it was the intention of the lawmakers that it should be given within a reasonable time thereafter, and as to what would be a reasonable time would depend upon the peculiar facts and circumstances of the case which are not before us. We cannot say as a matter of law that the notice was not given within a reasonable time, nor that the delay in giving it would have the effect to defeat the will of the majority of the qualified voters of the city as expressed at the election. No question is made here whether, on account of the delay in given the notice of the result of the election, the operation of the statute was not kept in suspension until the commencement of the publication of such notice. In fact the intention to raise this question was expressly disavowed at the trial, so that we are relieved of an examination into that matter.

VI. While there seems to have been some informality and irregularity in the proceedings had in respect to the election in question, it is not perceived that any essential requirement of the statute had been disregarded. In view of the fact that we have decided that the local option statute was legally adopted at the election, held in respect thereto, it follows that it, the said

State ex rel. Church v. Weeks.

local option law, operated as interdict upon the authority of the respondents to grant the relator a license as a dramshop keeper in said city at the time of his application therefor.

As the respondents were prohibited by law from granting dramshop licenses to any one in the said city, at the time of the application therefor by relator, it becomes unnecessary to inquire whether he had been convicted, or was then indicted, for selling liquor in violation of law.

Upon the consideration of the whole case we discover no vice in the election proceedings presented by the record before us that would justify us in declaring that said local option statute was not legally adopted in said city, or that its provisions were not at the time of the relator's application for a dramshop license an operative prohibition upon the authority of the respondents to issue such license.

The judgment of the circuit court will be affirmed. All concur.

ON MOTION FOR REHEARING.

The relator has failed to suggest any reason which would justify us in granting him a rehearing.

He is in error, in supposing that we overlooked the character of the entry on the records of the city council, in relation to the action of the committee to whom was referred the petition for the election under the "local option" act.

This entry was read from the records of the city council, and was not the *report of the committee.*

We are bound to presume that, when a body exercising legislative functions, like that of the city council of the city of Carthage, appoints a committee to investigate a matter of so grave importance as this, the report of such committee will, in conformity to legislative practice and usage, be in writing. The entry on

the record of the council, referred to, does not overcome this presumption. The report is one thing, and the entry on the records of the council, concerning it, is another.

The entry in question shows, that the committee made a report to the council, but it is not the report itself. The entry is but an epitome of the report.

It shows the conclusions only of the committee. The report, no doubt, stated the necessary facts upon which the conclusion of the committee was based, and whether it did or not, in the absence of evidence to the contrary, we must presume that such was the case.

II. Having reached the conclusion that the election, held in the city of Carthage under the "local option" statute, was valid, and that it put that statute in operation, and made it applicable to that city, it is difficult to understand how the mere negligence of the canvassing officers, whose duty it was to canvass the election returns, and officially announce the result of the election, could have the retrospective effect, to defeat the will of the qualified voters, thus lawfully expressed.

The local option act, in terms, provides, however, that no dramshop license shall be granted during the time of the publication of the notice of the result of the election. This implies that the prohibitions of the act do not take effect until the publication was commenced.

The officers of the city by refusing to give notice of the result of the election, in the manner required by the fifth section of the act, were unable to delay the taking effect of the act. But the moment the publication of the notice of the result of the election was begun the jurisdiction of the county court, to grant dramshop licenses in said city, was ousted. The publication in this case was begun before the application for the writ in this case was made.

The return pleaded this fact.

Now it may have been true that the relator was, entitled to the license at the time of his application therefor to the county court, but, at the time of the application to the circuit court for the mandatory writ, the county court had been, by reason of the election and the commencement of the publication of the notice of the result thereof, deprived of its jurisdiction to grant such license. The circuit court, therefore, properly refused to compel, by *mandamus*, the county court to do an act which the local option statute at that time prohibited, as is abundantly shown by the following authorities: High on Extraordinary Rem., secs. 14–39; *Williams v. Co. Commissioners*, 35 Me. 345; *People v. Railroad*, 55 Ill. 95; *Ins. Co. v. Reicher*, 5 Wall. 541; *Ex parte McCardle*, 7 Wall. 514; *Ins. Co. v. Supervisors*, 24 Barb. 166; *Bassett v. School Directors*, 9 La. Ann. 513.

Motion denied.