# THE STATE ex rel. HOPPER, Appellant, v. COTTENGIN et al.

### Division One, February 18, 1903.

1. **County Bonds:** ILLEGALITY: MONEY COLLECTED, HOW APPLIED. Even though the bonds issued by a county court to build a courthouse were illegally issued, yet it is a *non sequitur* to hold that the money collected to pay the principal and interest of the same, being in the treasury without authority of law and not appropriated to any legal purpose, is applicable to the payment of a general judgment against the county; for, the moneys so collected constitute a special fund raised for a particular purpose, while only the general revenue fund of the county, not otherwise appropriated, can be applied to the payment of a general judgment.

2. **Mandamus:** WHEN NOT TO ISSUE. The writ of mandamus ought not to issue when a judgment therein would in a collateral matter decide questions of importance between persons some of whom are not parties to the proceedings. It can not be used to compel a county court and treasurer to use the money in the treasury in payment of plaintiff's judgment against the county, on the theory that the county bonds which that money was collected to pay were illegally issued, unless the bondholders are made parties.

Appeal from Wright Circuit Court.—*Hon. Argus Cox,* Judge.

AFFIRMED.

*L. O. Neider* and *Thos. H. Musick* for appellant.

(1) Showing available funds in treasury makes a prima facie case, and relator is entitled to payment of judgment. State ex rel. v. Mayor, 58 Mo. App. 124; State ex rel. v. Treasurer, 43 Mo. 228. (2) Funds in treasury unappropriated to any legal purpose are available to pay this judgment. State ex rel. v. Mayor, supra; State ex rel. v. Craig, 69 Mo. 565; State ex rel. v. Treasurer, supra. (3) The funds collected for sinking fund and interest on courthouse bonds are not ap-

propriated to any legal purpose because the bonds and coupons are illegal and void, being a debt made in excess of the constitutional limit. Secs. 11 and 12, art. 10, Constitution; R. S. 1889, secs. 3134, 3166, 7663, 7664, 7665; Book v. Earl, 87 Mo. 246; Andrew Co. ex rel. v. Schell, 135 Mo. 31; Wilson v. Knox Co., 132 Mo. 387; Barnard v. Knox Co., 105 Mo. 382; State ex rel. v. Railroad, 87 Mo. 236.    (4)    It being shown in evidence that the sum of $2,352.32 has been set apart by the county court to pay interest and debt on said courthouse bonds that sum is therefore unappropriated to any legal and legitimate purpose.    This fund is therefore available for relator's judgment.    State ex rel. v. Railroad, supra.    (5)    The county court had no power to collect these taxes for the purpose of paying courthouse bonds without compliance with sections 7653 and 7654, Revised Statutes 1899, and it can not pay them out for any purpose for which it could not collect them.    State ex rel. v. Railroad, supra; State ex rel. v. Shortridge, 56 Mo. 126; State ex rel. v. Hager, 91 Mo. 452.    (6) The returns admit $1,132 of this money in the treasury. The defendant treasurer testifies that there is $1,162.95 of these funds in the county depositary, and the county clerk testifies that there are $770 of the funds loaned out, so there can be no question of a sufficiency of funds set apart to pay this illegal debt, to meet this judgment. The funds being in hand, it is the duty of the treasurer to pay it.    State ex rel. v. Treasurer, supra; School Dist. v. Lauderbaugh, 80 Mo. 190; State ex rel. v. Justices Bollinger Co. Court, 48 Mo. 475.    (7)    The fact that the county court had power to levy the five cents as a part of the ordinary county revenue, and that they failed to apportion it as such, gave them no power to set it apart to pay the illegal courthouse debt.    State ex rel. v. Macon County Court, 68 Mo. 29.

*W. S. Pope* for respondents.

Relator was not entitled to a writ against the county treasurer.    Section 3165, Revised Statutes 1889, pro-

vides that he can only disburse money on warrants drawn by order of the county court. Inasmuch as no warrant was drawn upon him for this money, he could not be compelled to pay. There was no demand upon the county court for payment of the judgment out of the fund mentioned before the institution of the suit, and before the mandamus could properly issue there must have been a demand and refusal. 2 Dillon on Municipal Corporations (4 Ed.), sec. 866. The judges plead no demand on them, and no refusal. Chicago v. Sansum, 87 Ill. 182; Alexander v. Comm'rs, 67 N. C. 330; State v. York Sch. Dist., 8 Neb. 92; State v. Ramsay, 8 Neb. 286; Tapping on Mandamus, 282-3-4-5; Angell & Ames on Corpor. (11 Ed.), sec. 707, p. 761; Railroad v. Plumas Co., 37 Cal. 354. The writ was made returnable immediately, and defendants answered on the same day that it was issued and served, and it was a good defense on the part of the county court that the court would not be in session until the first Monday in August, next, and they could not, if they so desired, comply with the demands made in the writ. The circuit court could not in this suit adjudicate as to the validity of the bonds outstanding, and for the payment of which the money in the treasury was levied and appropriated. Mandamus will not issue, except where the party applying for it has a clear and undoubted right to the relief prayed for. It will not issue in doubtful cases. Dillon on Municipal Corporations (4 Ed.), sec. 287. The peremptory writ must conform strictly to the alternative. The trial court had only a right to grant the same relief demanded by the alternative writ. It could not grant a peremptory writ for a part only of the relief prayed. Millet v. Field, 37 Mo. App. 101; State ex rel. v. Railroad, 77 Mo. 147; School District v. Lauderbaugh, 80 Mo. 190; State ex rel. v. Seibert, 130 Mo. 202; Chance v. Temple, 1 Iowa 473. Upon the whole record before the court the relator is not entitled to a reversal or peremptory writ. Bell v. Pike County Court, 61 Mo. App. 173; State ex rel. v. St. Louis Circuit Court, 1 Mo. App. 543; State ex rel. v. Everett,

52 Mo. 89; Hambleton v. Town of Dexter, 89 Mo. 188; State ex rel. v. Governor, 39 Mo. 388; State ex rel. v. Board of Health, 103 Mo. 22; State ex rel. v. Burkhardt, 59 Mo. 75; State ex rel. v. Trustees of Pacific, 61 Mo. 155; State ex rel. v. Hudson, 13 Mo. App. 61; State ex rel. v. Ray County Court, 52 Mo. 27; State ex rel. v. Williams, 96 Mo. 13; State ex rel. v. Holliday, 65 Mo. 76; State ex rel. v. Schmidt, 36 Mo. App. 550; State ex rel. v. Davis, 54 Mo. App. 447; State ex rel. v. Joplin Waterworks, 52 Mo. App. 312.

BRACE, P. J.—On September 16, 1898, the relator obtained judgment against Wright county for the sum of $1,776.45, and on May 30, 1899, instituted this proceeding by mandamus in the circuit court of said county to compel the respondents, who are the judges of the county court and the treasurer of said county, the former to order payment of said judgment and draw a warrant on the county treasurer therefor, and the latter to pay the same out of a fund in said treasury derived as follows:

At the May term, 1897, of said county court, and on May 7, 1897, the following order was made by said court:

"Whereas, the courthouse situated at Hartville, the county seat of Wright county in the State of Missouri, was destroyed by fire, and the said county of Wright has no courthouse, and it is necessary for the transaction of public business to erect a courthouse forthwith and the said county of Wright has no means with which to erect the same but by an issue of county bonds, and

"Whereas, the said county of Wright has no bonded indebtedness and the bonded indebtedness hereafter to be issued under the provision of our statutes authorizing the erection of a courthouse, will not equal five per cent of the assessed valuation of the real and personal property, in said county of Wright;

"Therefore, it is ordered by the county court of the said county of Wright, that county bonds, of the

said county of Wright, in the sum of $10,000, be issued under and in pursuit of the provisions of sections 3107, Revised Statutes of Missouri for 1889, for the purpose of rebuilding a courthouse at Hartville, the county seat of said county of Wright, said bonds to be of the denomination of $500 each, and numbered from one to twenty, both inclusive, payable in fifteen years from July 1, 1897, bearing six per cent interest per annum payable annually, principal and interest payable in lawful money of the United States, at the office of the county treasurer of said county of Wright, interest to be evidenced by coupons thereto attached numbered seriatim from one to fifteen, both inclusive; said bonds shall be signed by the president of the county court, countersigned by the county clerk with the seal of his office affixed and shall have printed on the back thereof, a copy of the order of the county court under which said bonds were issued, and the coupons thereto attached to be countersigned by the county treasurer. It is therefore ordered by the court that for the purpose of paying interest on said bonds there shall be levied on the taxable property in the said county of Wright for each year until all the interest on said bonds is paid the sum of three cents on the $100 valuation.

"And it is further ordered by the court that for the purpose of creating a sinking fund to pay said bonds at maturity there shall be levied upon the taxable property of said county of Wright in each year until the principal of said bonds is paid, three cents per $100 valuation, which shall be collected and paid into the treasury and held as a sinking fund to pay the principal of said bonds and to be used for no other purpose."

In pursuance of this order a tax of two cents on the one hundred dollars was levied for said sinking fund and three cents on the one hundred dollars for said interest fund for the years 1897 and 1898, and the evidence tends to prove that on account thereof there was collected and paid into the treasury for the year 1897, the sum of $1,253, and for the year 1898 the sum of $1,100; that at the time this proceeding was instituted,

there was of the moneys so collected, in the treasury, and to the credit of the sinking fund the sum of $550.65, and to the credit of the interest fund the sum of $615, and that there was loaned out the sum of $770, making a total of $1,935.65, which is the fund the relator contends is applicable and which he seeks to have applied to the payment of his judgment. The ground of this contention is that the bonds and coupons issued in pursuance of the order of May 7, 1897, are illegal and void, being, as it is claimed, a debt created in excess of the limitations of sections 11 and 12 of article 10 of the Constitution, and that the taxes levied and collected to provide a fund for the payment of the principal and interest thereof were so levied by the county court without any order of the circuit court as required by sections 7653 and 7654, Revised Statutes 1889. Hence, the fund aforesaid in the county treasury so collected in this manner and for these purposes, is there without warrant of law, is not appropriated to any legal purpose, and is therefore applicable to the payment of relator's judgment.

The conclusion drawn by the relator in this contention is such a palpable *non sequitur* from the premises laid down in his proposition that it becomes unnecessary to consider the serious questions involved in his premises, in which other persons not parties to this proceeding are deeply interested, and who ought to be heard in any case affecting their rights.

The writ of mandamus is to a certain extent a discretionary writ and ought not to issue unless there is a clear legal right, and will be denied in doubtful cases, or when it would in a collateral matter decide questions of importance between persons not parties to the proceeding upon whom its enforcement would entail great hardships and difficulties. [19 Am. and Eng. Ency. of Law (2 Ed.), p. 753, b.]

The judgment of the relator was a general judgment against the county. His only right was to have funds belonging to the general revenue fund of the county, not otherwise appropriated, applied to the pay-

ment of his judgment. The fund in question was no part of the general revenue fund of the county. It was a special fund raised for a particular purpose, and neither the county court nor the county treasurer had any right to apply a dollar of it to any other purpose. If, on the one hand, the bonds are valid, and the taxes were legally levied, the bondholders are entitled to it. If, on the other hand, the bonds are invalid, or the taxes were illegally levied, the taxpayers from whom it was illegally and wrongfully wrested are entitled to it. In neither event is the county entitled to it, and in neither event is it applicable to its general indebtedness. The county court and the treasurer could not so rightfully apply it. The circuit court, on the facts of the case, correctly refused a peremptory writ commanding them so to do, and its judgment is affirmed. All concur.