STATE ex rel. CRABBE, Appellant, v. MILLER, etc.,
Respondent.

### St. Louis Court of Appeals, March 3, 1908.

DRAMSHOPS: License: Local Option. A dramshop keeper applied
to the county court and had issued to him a license to keep a
dramshop nearly two months before the expiration of a license
under which he was then trading. A local option election was
held and the local option law adopted in the county after grant-
ing the new license and before the expiration of the old one.
The county court at the time of granting the new license did not
know the time of the expiration of the old one. After the local
option law was adopted and before the expiration of the old
license, the county court revoked the new one. The dramshop
keeper had paid nothing on it and had acquired no vested inter-
est. *Held*, under the circumstances the dramshop keeper could
not compel by mandamus the issuance of the new license; it was
obvious that the purpose of the proceeding of the dramshop
keeper was to evade the effect of the election if it should result
in adopting the law.

Appeal from Knox Circuit Court.—*Hon. Chas. D. Stew-
art*, Judge.

AFFIRMED.

*F. H. McCullough* for appellant.

(1) The county court having exercised its judicial
function and granted the license, then the duties of the
clerk and collector are merely ministerial and man-
damus will lie to compel the performance of the same.
Mandamus is the proper remedy to compel the issuance
of a dramshop license when the applicant has complied
with all the requirements of the laws of the State. State
ex rel. v. Baker, 32 Mo. App. 98; Kansas City v. Flan-
ders, 71 Mo. 248; State ex rel. v. Myers, 80 Mo. 601;
Bean v. County Court, 33 Mo. App. 635; State ex rel. v.
Chase, 42 Mo. App. 343; State ex rel. v. Flad, 22 Mo.
App. 185; Black on Intoxicating Liquors, sec. 172; State

ex rel. v. Ashbrook, 154 Mo. 383. (2) Relator having done on his part all that the law demands, and the county court having granted his license as dramshop keeper, the duties of defendant are defined by statute and are merely ministerial, and may be compelled by mandamus. State ex rel. v. McGrath, 92 Mo. 357; State ex rel. v. Garesche, 65 Mo. 489; State ex rel. v. Chase, 42 Mo. App. 352.

*J. C. Dorian* and *L. F. Cottey* for respondent.

(1) The court may vacate, amend, revise or revoke its order granting a license during the term at which the order was made. 17 Encyc. of Law (2 Ed.), p. 813; State ex rel. v. Heege, 37 Mo. App. 350. (2) We have examined relator's brief and the cases cited and find he relies on the direct proceedings where all the parties are brought before the court, and seems to ignore the fact that this is a collateral attack, on the action of the court in a judicial proceeding, the action of the county court in granting a dramshop license is a judicial one, and every fact necessary for it to obtain jurisdiction must appear on the face of the record. R. S. 1899, sec. 2993; State ex rel. v. Heege, 37 Mo. App. 338; State ex rel. v. Cauthorn, 40 Mo. App. 94; State ex rel. v. Cooper County, 66 Mo. App. 96.

GOODE, J.—On November 8, 1907, the county court of Knox county entered of record an order approving the petition of relator Crabbe for a license to keep a dramshop "at his stand on the north part of lot 8, block 9, in the county addition to the town of Edina;" and ordered that a license be issued to him. Afterwards the county court adjourned until December 10, 1907. December 11th, at this adjourned term, the court entered of record an order revoking the prior order of November 8th, granting the license to Crabbe. In the order of revocation the court recited that after due investigation

it decided the order made November 8th was premature; further that it had no power to issue or cause to be issued a dramshop license in vacation, nor during the time the applicant had a license to conduct a dramshop at the place designated in his petition, and that Crabbe had made no tender of his old license then in force to be cancelled by the court before issuing a new license; and it was the intention of the court at the time the order of November 8th was made that a new license should not be issued until Crabbe's old license had expired; that the court was then ignorant of when the old license expired; and was deceived by Crabbe's application for a new one. It should be stated that when Crabbe petitioned for the license granted on November 8th, he was operating a saloon at the stand described in his petition, under a license theretofore issued to Crabbe & Swann, which did not expire until December 25, 1907. It was to this old license the county court referred in its order of revocation. Prior to December 11th, when said order was entered, and on December 5th, Crabbe, for the first time, requested the clerk of the county court to issue a license to him in conformity to the order made on November 8th. On December 7th, two days later than this demand on the clerk, an election was to be held under the local option law to determine whether or not intoxicating liquors should be sold in Knox county. This election was duly held, and resulted in prohibiting the sale of intoxicating liquors in said county. It seems the election had been ordered at the November term of the county court, the day previous to the approval of Crabbe's petition for a license. The present case is a proceeding for the writ of mandamus to compel Frank Miller, clerk of the county court, and Daniel Ryan, collector of the revenue of Knox county, to perform certain duties imposed on them by the statutes relating to dramshop licenses. One of the sections of the dramshop law says the clerk of the county court shall deliver to the collector of the county,

without delay, a statement of the licenses granted at each term, the amount of tax levied on each license for State and county purposes, including the *ad valorem* tax, and shall charge the collector with the amount contained in every such statement and give him a receipt for the same. The next section requires the collector to collect from the persons named in the clerk's statement, the amount specified as levied on each license and give a receipt for same. The next section forbids the clerk to deliver a license to any one until the applicant produces a receipt from the collector showing all taxes levied on the license have been paid. [R. S. 1899, secs. 2998, 2999 and 3000.] The return to the alternative writ pleaded, *inter alia,* the order of the county court revoking the license to relator, and the adoption of the local option law by the voters of the county at the election of December 7th, before the license already held by relator had expired, and before it was intended the new one should go into effect. It is unnecessary to recite the contents of the pleadings, about which no point is made. The material facts are as we have stated them and the clerk of the county court is not acting in defiance of said tribunal, but according to the opinion of its members. The circuit court refused to grant a peremptory writ and relator appealed.

The revoking order of the county court is said to be a nullity as against relator because no notice or chance to be heard was given him. Relator did not testify he received no notice, and the only testimony bearing on the question is the statement of the clerk of the county court that he himself gave relator no notice and did not know of any being given. But whether the revocation of the order for license was valid or not, we think the peremptory writ was properly refused. The obvious purpose of the whole proceeding on relator's part was to evade the effect of the coming election, if it resulted in prohibiting the sale of intoxicating liquors in the county

—to legalize his business for six months longer, whatever the result might be. [R. S. 1899, sec. 3031.] He was conducting a saloon at the identical spot where he asked a new license to conduct one, and his old license, which he was treating as in force, would continue until December 25th, or more than two weeks after the election would occur. He did not ask for the new license in order that he might operate under it, until nearly a month after it was ordered, to-wit: December 5th, or two days before the election. On December 6th, the day before, relator obtained the alternative writ to be returned December 18th, which would be after the result of the election was known. On these facts the circuit court rightly refused to compel a license to be issued to relator in conformity to the order of the county court of November 8th. Relator had paid nothing for his license and had acquired no vested interest therein which entitled him to continue the saloon business for another six months, nor had the license been issued. The statutes continue in effect licenses issued prior to the day of the election but say none shall be issued afterwards and pending publication of the result. [R. S. 1899, sec. 3031.] When the alternative writ was returned the sale of intoxicating liquors had been prohibited in the county by a vote of the people. The point of law at issue was touched upon, if not determined in substance, in State ex rel. Church v. Weeks, 38 Mo. App. 566, 579, which was an application by mandamus to compel the county court to issue a license in favor of the relator Church. The Court of Appeals said the relator might have been entitled to a license when he applied for it, but prior to his application to the circuit court for the mandatory writ, a local option election had occurred prohibiting the sale of liquors in Carthage, where relator's saloon was kept. This being true, it was held the county court ought not to be compelled to grant the license. In the present instance a license had been ordered but

not issued prior to the election, which had taken effect before the return day of the alternative writ. Matters arising after an alternative writ of mandamus is issued, which make it improper for the respondent to do the act the relator seeks to compel, afford ground for refusing a peremptory writ. This was decided in State ex rel. Sharp v. Weeks, 93 Mo. 499, 6 S. W. 266, in which application was made to compel the Jasper county court to grant a license to the relator Sharp. It appeared that after the alternative writ had been issued and served on the members of the county court, a copy of an indictment against Sharp for selling liquor to a minor illegally was filed with the county court. This fact having been made known to the Supreme Court in the return to the writ, said court declared it was well settled that facts which ought to forbid the doing of a certain thing required to be done by an alternative writ, may arise after the issuance of the writ and be as successfully pleaded as though they had arisen previously. Further, that it would be an abuse of the authority confided to the county court to issue a license in the circumstances mentioned in the return, and an unwise exercise of the powers of the Supreme Court to compel the county court to grant a license under such circumstances. In other jurisdictions are found decisions of a similar tenor. In Williams v. County Commissioners, 35 Maine 345, it appeared that under appropriate statutes a road had been petitioned for, laid out and located as prayed by the petitioners. Subsequently the county commissioners refused to proceed further with the matter and mandamus was asked to compel them to close the proceedings. The writ was denied because, though the proceedings to open the road were regular as far as they had gone, the statute under which they were taken had expired by limitation before concluding the business and the proceedings lapsed with the statute. It was held the rights which had accrued to the petitioners for the

road by virtue of what had been done while the statute was in force, were of an inchoate and not of a vested character. In ex parte McCardle, 74 U. S. 506, it was held the right of appeal in a habeas corpus case given by statute from the decision of a lower federal court to the Supreme Court of the United States, was lost by the repeal of the statute, even in a case pending on appeal when the repeal occurred. We think relator had acquired no vested interest in a new license which ought to be enforced by mandamus against the will of the county court and of the electors of the county. If we were dubious concerning the right of relator to a mandate compelling the granting of a license to him, it would be our duty to resolve the doubt against him. [State ex rel. Gumpertz v. Higgins, 84 Mo. App. 531; State ex rel. Hopper v. Cottengin, 172 Mo. 129, 72 S. W. 498.]

The judgment is affirmed. All concur.