THE STATE v. DUGAN, *Appellant.*

Division Two, May 23, 1892.

1. Local-Option Law: CONSTITUTION. The local-option law (Acts, 1887, p. 179) is constitutional.

2. ———: NOTICE OF ELECTION. The omission of the local-option law to provide for giving notice of the election thereunder within a city does not invalidate the law.

3. ———: INDICTMENT. An indictment for selling intoxicating liquor in a city contrary to the provisions of said act need only allege with reference to its adoption "that the act of legislature, approved April 5, 1887, known as the local-option law had been adopted, and was in force as the law of the state within such city."

4. ———: MINUTES OF BOARD OF ALDERMEN: PETITION FOR ELECTION. The recital in the minutes of the board of aldermen to that effect is competent and sufficient evidence that a petition, signed by one-tenth of the qualified voters of the city, asking that an election be held under the local-option act within the city limits, was presented to the board.

5. Inferior Courts and Tribunals: JURISDICTION: PRESUMPTIONS. When a court although of inferior or limited jurisdiction or a mere ministerial board is required to find the existence of a fact *in pais* in order to authorize it to perform an act, it will not be presumed for the purpose of overthrowing its jurisdiction, in the silence of its record, that the fact did not exist; but the general presumption of right acting which attends all official bodies will obtain in such case, and it will be presumed that the fact did exist until the contrary is made to appear in a direct proceeding.

6. Local-Option Law: PROOF OF NOTICE OF ELECTION. The local-option act having failed to prescribe the manner in which notice of the election should be proved, oral testimony of the publishers of the newspaper in which the notice was published was competent.

7. ———: NOTICE OF RESULT OF ELECTION. Under the provisions of said law that the "municipal body ordering such election shall publish the result of such election," a notice signed by the mayor in compliance with an ordinance was sufficient.

8. ———: MODE OF CONDUCTING THE ELECTION. Where the ordinance, providing that the election "should be conducted, the returns thereof made and the result ascertained and determined in accordance in all respects with the laws and ordinances governing municipal elections in the city," corresponds literally with the provisions of the statute, it was a sufficient direction for conducting the election.

9. ———: EVIDENCE, SUFFICIENCY OF TO CONVICT. Where the evidence shows that defendant was a merchant in the city in which the local-option law was in force, and that about May 7, 1890, some one in his house and as part of the business sold to two persons each a drink of whiskey for which they paid, the evidence was sufficient to justify a conviction.

*Appeal from Johnson Criminal Court.*—HON. JOHN E. RYLAND, Judge.

AFFIRMED.

*S. T. White* for appellant.

(1)    The local-option law is unconstitutional; because its vitality is not by legislative sanction in localities where it was supposed to be enforceable, but by the sanction of a certain class of voters within localities, and a repeal or continuance of its vitality after four years from the time of the original vote. That the legislature being inhibited by the constitution from passing laws and repealing the same, that are special or local, it is equally inhibited from giving effect to a local or special law, or suspending the same, by a vote submitted to the voters of the city. *Barto v. Himrod,* 59 Am. Dec. 506; *Santo v. State,* 62 Am. Dec. 487; *Lammert v. Lidwell,* 21 Am. Rep. 411; Cooley on Constitutional Limitations [3 Ed.] pp. 120, *et seq.,* see page 128, on our constitution of 1865; SHERWOOD'S · dissenting opinion in *State ex rel. v. Pond,* 93 Mo. 606. It is not uniform in the manner of its adoption in cities and counties.    R. S., secs. 4598, 4599.    To become a law in a county: - *First.*    Those voting shall be qualified to vote for members of the legislature. *Second.*    The general election law for county officers shall govern the election.    *Third.*    The election shall not be held within sixty days of a general election. *Fourth.*    The votes shall be canvassed, and the results determined according to the general election law.    (2) No notice is provided for by the act to be given to citizens of cities within their territorial limits.    Without a provision of such notice, said act is inoperative and void.    (3)    There was no legal evidence intro-

duced by the state that the local-option law was adopted in Warrensburg according to the requirements of the statute, or was in force at the time the alleged offense was committed. The decisions of the courts of appeal have been so conflicting and unsatisfactory as to the proper construction given to the statute, that the decisions on all the questions that seem to bear upon this case are given below, without reference to any interpretation of their proper meaning or weight. This case will be presented entirely on its own merits with reference to the law. *State ex rel. v. Tucker*, 32 Mo. App. 620; *State v. Searcy*, 39 Mo. App. 393, certified by court of appeals to the supreme court; *Bean v. County Court*, 33 Mo. App. 635; *State ex rel. Church v. Weeks*, 38 Mo. App. 566; *State v. Mackin*, 41 Mo. App. 99; *State v. Prather*, 41 Mo. App. 456; *State v. Baker*, 36 Mo. App. 58; *State v. Hutton*, 39 Mo. App. 410. (4) There was no proof that could convince an impartial jury, that the defendant sold or authorized the sale of the intoxicating liquors, charged in the indictment.

*John M. Wood*, Attorney General, for the State.

(1) All of the constitutional questions raised by appellant in the record in this cause and repeated in his brief, when thoroughly analyzed, are comprehended in the two following propositions: "This law affects localities, not by legislative sanction, but by a popular act of certain specified voters, which is a delegation of legislative powers, and is not uniform as to the method by which it may be applicable to localities." "It is an attempt to pass a special law contrary to subdivision 2 of section 53 of article 4 of the constitution of the state." These two questions were fully and carefully considered in the cases of *State ex rel. Maggard v. Pond*,

93 Mo. 606; *Ex parte Swann*, 96 Mo. 44. And effectually set said question at rest. The fact that one judge dissented or was absent did not render the decisions any the less the judgment of the court. As to the point made that the information did not state that the law took effect within ninety days within the city of Warrensburg, it is sufficient to say that it is held in *State ex rel. Maggard v. Pond, supra*, that it took effect at the same time as other general laws, but was simply held in abeyance until the people of the city or county brought themselves under its provisions by an election, as therein provided for. The above cases were reaffirmed by this court in the case of *State v. Moore*, 107 Mo. 78. (2) The local-option law was duly and regularly adopted in the city of Warrensburg, as shown by the evidence introduced upon the trial. The objections made to the regularity of the proceedings in adopting the law we think are sufficiently disposed of in the cases of *State v. Searcy*, 39 Mo. App. 393; *State v. Hutton*, 39 Mo. App. 410; *State ex rel. v. Weeks*, 38 Mo. App. 566; *State v. Baker*, 36 Mo. App. 58.

MACFARLANE, J.—This was a prosecution under the statute known as the local-option law. The indictment charged in substance that the city of Warrensburg, in the county of Johnson, was a municipal corporation having a population in excess of twenty-five hundred, and had adopted the local-option law which was in force on the seventh day of May, 1890, when defendant, within the limits of said city, contrary to said law, did unlawfully sell intoxicating liquor to a person named. A trial to the court, without a jury, resulted in a conviction of defendant, and he appeals to this court, a constitutional question being involved.

I. The constitutionality of the local-option law is again challenged. On this point we need only say that

the cases of *State ex rel. v. Pond*, 93 Mo. 606, and the *Swann case*, 96 Mo. 44, declaring the law constitutional, have been approved and followed by the court *in banc* in the recent case of *State v. Moore*, 107 Mo. 78.

II.   A constitutional objection is also made upon the ground that the law nowhere provides for publishing a notice of the special election within the limits of the city to be affected by the result of the vote. This objection, we believe, has not before been made or considered.

The only provision for giving notice of the election is found in section 3 of the act which provides "that notice of such election shall be given by publication in some newspaper published in the county." It is generally held that a notice of a special election is a necessary prerequisite to its validity. *McPike v. Pen*, 51 Mo. 63.

We do not think it follows that the law would have been invalid had no provision whatever been made for giving notice. In *McPike v. Pen, supra*, in speaking of the necessity of a notice of a special election, BLISS, J., says: "Although the act is silent upon this subject, we must assume either that the obligation to direct a proper notice is implied in the authority to order an election, or that the notice must be given as required in the general election law." A failure of the law to provide for giving notice of the election within the municipality did not invalidate the law.

III.   Several objections are urged to the sufficiency of the proceedings under which the law was adopted in the city of Warrensburg, as also to the admissibility and sufficiency of the evidence offered to prove that all steps had been taken which were necessary to adopt the law.

The indictment need only have alleged "that the act of the legislature approved April 5, 1887, known as

the local-option law has been adopted, and was in force as the law of the state," within the city of Warrensburg at the date at the alleged offense, "without reciting in detail the manner in which it was adopted." *State v. Searcy*, 39 Mo. App. 393; *State v. Prather*, 41 Mo. App. 455.

It is true the indictment set out in detail that all steps, made essential under the law to its adoption in the city of Warrensburg, had been regularly taken, and, on the trial, took the burden of proving them; and for that purpose put in evidence the minutes of the board of aldermen of the city, the ordinance submitting the question to a vote, the proof of publication of notice in the *Johnson County Star*, the record of the board giving the result of the election, and declaring the adoption of the law in the city, and proof of the publication of the result of the election in the said *Johnson County Star*. The evidence so offered did not rebut the presumption of the regularity of the proceedings under which the law was declared adopted. Indeed, I am unable to observe the omission of any essential step in the proceedings.

IV. The minutes of the board of aldermen recite that "R. Baldwin presented a petition, signed by one-tenth of the qualified voters of the city, asking that the question of prohibiting the sale of spirituous or intoxicating liquors within the limits of this city be submitted to the people as provided for in an act of the general assembly of the state of Missouri, approved April 5, 1887." It is insisted that the recital of the minutes, or records of the board of aldermen, was not admissible as evidence, and was insufficient to prove that one-tenth of the qualified voters of the city had petitioned that the question of the sale of intoxicating liquors in the city be submitted to a vote of the people.

In *State v. Searcy, supra,* it was insisted that because the record of the county court was silent, and did not recite the essential fact that the petition was signed by one-tenth of the qualified voters of Greene county, outside the city of Springfield, therefore, jurisdiction to make the order for an election was not shown and no valid election could have been held. This objection was fully answered by THOMPSON, J., who delivered the opinion of the court in which he says: "We think that this case falls within a principle on which we have frequently acted, and which is a limitation of the rule above stated in regard to the presumption of the jurisdiction of courts, that where a court, although of inferior or limited jurisdiction, or a mere ministerial board, is required to find the existence of a fact *in pais,* in order to warrant it to do what it does, it will not be presumed, for the purpose of overthrowing its jurisdiction, in the silence of its record, that the fact did not exist, but the general presumption of right acting, which attends all official bodies, will obtain in such a case, and it will be presumed that the fact did exist, until the contrary is made to appear in a direct proceeding. *Riggins v. O'Brien,* 34 Mo. App. 613."

We concur fully in what Judge THOMPSON says and only add that in this case the record recites the existence of the necessary fact, and it is not necessary to invoke the presumption of right acting.

V. It is next objected that the record failed to show that either the notice of the election or its result was properly given. The publication of the notice was proved by the oral testimony of the publishers of the paper in which it was made. The fact that the notices were given in the manner prescribed is what was required by the statute. The manner in which the

fact should be proved was not provided, and was not material. The proof of the publication of these notices was sufficient. *State v. Baker*, 36 Mo. App. 63; *State v. Hutton*, 39 Mo. App. 417.

VI. The notice of the result of the election as published was signed by the mayor. The ordinance providing for an election directs that the mayor should publish the result in accordance with the provisions of section 5 of the act of the general assembly "in relation to the prevention of the evils of intemperance," approved April 5, 1887. The act required that the "municipal body ordering such election shall publish the result of such election," etc. We think the publication of the notice, under the direction contained in the ordinance that it should be published by the mayor, a publication by the "municipal body ordering such election" within the intent and meaning of the act. The "municipal body" was only required to cause the publication to be made, and it was very appropriately signed by the mayor, the presiding officer of that body.

VII. The ordinance provided that the election "should be conducted, the returns thereof made and the result ascertained and determined in accordance in all respects with the laws and ordinances governing municipal elections in the city." The ordinance in these requirements corresponds literally with the provisions of the statute. It was not necessary to set out, more particularly, the manner in which the election should be held. The ordinances of the city, on that subject, were pointed out by the statute as furnishing sufficient directions for conducting the election.

The courts of appeals most frequently have appellate jurisdiction of cases growing out of the violations of this law, and most of the questions urged in this appeal as

grounds of reversal have been carefully and exhaustively considered by these courts in *State v. Searcy, supra; State v. Prather, supra; State v. Hutton, supra; State v. Baker, supra.* The rules and principles announced in these cases are so satisfactory that we have not thought it necessary to look beyond them for authority for our ruling in this case.

VIII. The evidence shows that defendant had a license to do business as a merchant in Warrensburg, and was engaged in such business. It tends also to show that about the seventh day of May, 1890, some one in defendant's business house, and as part of the business, sold to two persons each a drink of whiskey, for which they paid. We think the evidence sufficient to justify the finding of the court.

The instructions given were in accord with the principles of law herein announced. Judgment affirmed. All concur.