CALLOWAY, *Appellant,* v. HENDERSON.

Division Two, July 2, 1895.

1. **Written Documents:** CONSTRUCTION. Effect must, in the construction of a written document, be given to the whole and every part of the instrument, when consistent with the rules of law and the intention of the parties.

2. ———: ———: EVIDENCE. Proof of the facts to which the document relates is not prohibited by the rule forbidding the introduction of parol evidence to vary or contradict a written instrument.

3. ———: ———: ———: PARTITION: PETITION. In a petition in partition the land was described as "being all of the land in survey 2625 except 20.25 acres within the limits of the town of Bridgeton, formerly Village A. Roberts," and this was followed by the further clause "and being the farm known as the property of the late George Robertson, deceased." *Held,* (1) that evidence was competent to show the relation of these terms to the subject-matter of the partition, and (2) that the latter clause above set out limited the language of the petition to the farm and excluded any part of the survey not included in such farm.

*Appeal from the St. Louis County Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

AFFIRMED.

*James E. Hereford* and *M. W. Huff* for appellant.

(1) When there is a false call in a deed and it can be rejected and still leave sufficient to identify the land it will be rejected. *Shewalter v. Pirner*, 55 Mo. 218. (2) Whenever natural or permanent objects are embraced in the calls of a deed they absolutely control. *West v. Bretelle*, 115 Mo. 653; *Cooley v. Warren*, 53 Mo. 166; *Mitchner v. Holmes*, 117 Mo. 185; *Clamorgan v. Railroad*, 72 Mo. 139; *Clamorgan v. Hornsby*, 13 Mo. App. 550; *Rutherford v. Tracy*, 48 Mo. 325; *Fenwick v. Gill*, 38 Mo. 510. (3) The court erred in admitting

against appellant's objections, statements of what the people in the neighborhood understood to be included in George Robertson's farm when the description included all of survey 2625. (4) Whenever a description refers to another deed, the description in the deed referred to becomes a part of the conveyance. *West v. Bretelle*, 115 Mo. 653; *Dolde v. Vodicke*, 49 Mo. 98; *Hays v. Perkins*, 109 Mo. 102.

*R. H. Stevens* for respondent.

(1) The respondent contends that a particular description of the property conveyed by the deed, to wit, the farm known as the property of the late George Robertson, controls the general description as contained in the patent certificate. Particular descriptions will control and prevail over general descriptions. *Grandy v. Casey*, 93 Mo. 935; *Rust v. Goff*, 94 Mo. 511; *Ellis v. Railroad*, 40 Mo. App. 105. (2) Respondent contends that the general word used after the particular words of description renders the description ambiguous, and it is competent to show by parol testimony and the papers filed in the case and the sale books of the sheriff what land was actually sold at the partition sale, and what land was intended to be included in deed made in pursuance of the sale. *Wolff v. Dyer*, 95 Mo. 545; *Bollinger County v. McDowell*, 99 Mo. 632; *Skinker v. Haagsma*, 99 Mo. 208; *Edwards v. Smith*, 63 Mo. 119.

GANTT, P. J.—Action in ejectment, for a tract containing thirty hundredths of an acre in United States survey number 2625, in St. Louis county. Ouster was laid June 2, 1891. The answer is a general denial.

The following facts were developed on the trial:

It was admitted by stipulation signed by the parties that from 1833 till 1879 or 1880 this tract in

dispute was occupied by one Baber or his descendants who went into possession under and by permission of Sarah Robertson, the mother of George Robertson. That George Robertson died in 1879 or 1880 seized in fee of this tract and it was *not a part of the farm known as the property of said Robertson.*

In 1882 the heirs of George Robertson brought their action for partition of the following described real estate lying, being and situated in the county of St. Louis in the state of Missouri, to wit:   One hundred and thirty-nine and seventy-five hundredths acres (139.75) more or less in United States survey number 2625 in township 46 of range 6, east of the fifth principal meridian and being all the land in said survey 2625, except twenty and twenty-five hundredths acres within the limits of the town of Bridgeton, formerly Village A. Roberts, *and being the farm known as the property of the late George Robertson* deceased; a more particular description of which will be found in a certain New Madrid patent certificate issued by the United States to Reinecke & Steinbeck or their legal representatives on the nineteenth day of May, 1874, and duly recorded in the office of the recorder of deeds for the county, now city, of St. Louis, Missouri, in book 496, at page 476, and to which reference is made; lot ten (10) in the town of Bridgeton in the county of St. Louis, Missouri, known as and designated on the plat of said town; also the west part of lot number forty-two (42) in the said town of Bridgeton, being ninety-two (92) feet front by three hundred and twenty (320) feet and ten (10) inches in depth; also part of lot nineteen (19) in said town of Bridgeton, fronting one hundred and nine and five twelfths (109 5-12) feet on St. Charles street by a depth of three hundred and twenty (320) feet and ten (10) inches.   Also fifty-hundredths (.50) acre in United States survey 2625,

township forty-six (46) north, range 6 east, now occupied by Christopher Brady under lease of George Robertson. Also one (1) acre in United States survey number 2625, township forty-six (46) north, range 6 east, bounded on the north by Moore, on the east by Weldon, on the south by Moore, and on the west by survey line.

A decree was rendered in that suit in which the property was described in the same words as those used in the petition. Under this decree the lands were sold and on September 1, 1882, the sheriff made the following report of sale:

"Patrick O'Malley being the highest, last, and best bidder, the land being lot ten (10) in the town of Bridgeton, for the sum of ten hundred and fifty (1050) dollars the same was stricken off and sold to him for that sum; and John A. Harrison being the highest and best bidder for the west part of said lot number two (2) in the town of Bridgeton for the sum of forty-five ($45) dollars, the same that was stricken off and sold to him for that sum; and Christ Brady being the highest and best bidder for said fifty hundredths (.50) acre, United States survey number 2625, for the sum of thirty-two and fifty hundredths ($32.50) dollars, the same was stricken off and sold to him for that sum; and George H. W. Heidorn being the highest and best bidder for said one acre in United States survey 2625 for the sum of eighty ($80.00) dollars, the same was stricken off and sold to him for that sum. And the first above described tract being one hundred and thirty-nine and seventy-five hundredths (139.75) acres in United States survey number 2625, all of the same being then and there by me offered for sale for a space of time was, for want of bidders, not sold."

On a renewed order the one hundred and thirty-nine and seventy-five hundredths acre tract was sold

and a report of sale filed January 29, 1883. "Samuel James and Charles Castello being the highest, best, and last bidders for the one hundred and thirty-nine and seventy-five one hundredths (139.75) acres more or less. (except about six acres lying north of and adjoining the said town of Bridgeton) in United States survey 2625 in township forty-six (46) north, of range six (6) east, of the principal meridian, and being the land included in said survey 2625 (except 20.25 acres within the limits of the town of Bridgeton, formerly Village A. Roberts and except the six (6) acres above described), and being the farm known as the George Robertson farm, and more particular description of which will be found in a certain New Madrid certificate issued by the United States to Reinecke & Steinbeck on the nineteenth day of May, 1874, and duly recorded, etc., for the sum of six thousand, nine hundred and thirty ($6,930.00) dollars, the same was stricken off and sold to them for that price.

And George H. W. Heidorn being the highest and best bidder for six (6) acres more or less of said tract of one hundred and thirty-nine and seventy-five hundredths acres (139.75) being all of that portion of said tract lying north of and adjoining said town of Bridgeton, for the sum of two hundred and fifty dollars ($250.00)."

On motion this sale was set aside and the order renewed. On June 21, 1883, a report of sale was filed from which it appears that at said sale said Bernard Schutte was the highest and best bidder for all that part of said real estate constituting the Robertson farm lying south of the town of Bridgeton and containing one hundred and thirty (130) acres of land more or less, at and for the price and sum of eleven thousand and twenty-five ($11,025) dollars, and the same was stricken off and sold to him for that sum.

And James C. Edwards was the highest and best bidder for the remainder of said real estate at and for the price and sum of five hundred and fifty ($550) dollars and the same was stricken off and sold to him for that sum.

In the sheriff's deed to Edwards it is recited that "whereas in the suit of said heirs for the partition of the following described real estate situated, lying and being in the county of St. Louis, state of Missouri, to wit, one hundred and thirty-nine and seventy-five hundredths (139.75) acres more or less in United States survey number 2625, township 46 north, of range 6 east, of the fifth principal meridian, and being all the land included in said survey number 2625, except twenty and twenty-five hundredths (20.25) acres within the limits of the town of Bridgton, formerly Village A. Roberts, and being the farm known as the property of the late George Robertson, deceased, a more particular description of which will be found in a certain New Madrid patent certificate issued by the United States to Reinecke & Steinbeck or their legal representatives on the nineteenth day of May, 1874.

"And James C. Edwards being the highest and best bidder for the following part of said real estate, became the purchaser thereof for the sum of five hundred and fifty ($550) dollars, all the right, title, interest and estate of said plaintiffs and defendants of, in and to all of the above described real estate except that part thereof constituting the Robertson home farm lying south of the town of Bridgeton, and containing one hundred and thirty (130) acres of land more or less, sold by me at said sale to said Bernard Schutte."

The defendant admits that the patent certificate to Reinecke & Steinbeck includes all of United States sur-

vey 2625, excepting twenty and twenty-five hundredths acres, constituting the town of Bridgeton, formerly the Village A. Roberts.

The following is an extract from the will of James C. Edwards:

"Also I give and bequeath to my niece, Callie E. Calloway, etc., also all that tract of land near the town of Bridgeton, containing eight (8) acres more or less which I acquired by purchase at sheriff's sale of the estate of George Robertson, deceased."

It was agreed that the plat herewith filed is a fair representation of the present subdivisions of survey 2625, and is the same now as it was at the time of the death of said George Robertson. That the parcels marked A, E and F were sold by said Robertson in his lifetime and more than thirty years ago. That the parcels marked B and C were at the time of his death, and had been for years prior thereto, occupied by tenants of said Robertson as residences under long leases. That the parcel marked C is one of the tracts described in the petition for partition among the heirs of said Robertson, and was sold to Christopher Brady, who was occupying it at that time under a long lease. That the parcel marked G was sold to Samuel James and Charles Castello, and the parcel marked H was sold to Geo. H. W. Heidorn, and that the sales to them, respectively, were set aside by the court. These sales were made on the ——— day of ———, 1882, and the sales were set aside and a resale was ordered.

That at said second sale said lands were sold in two parcels; one parcel being purchased by B. Schutte and the other parcel by James C. Edwards. That said Samuel James and Charles Castello, who were the purchasers of the parcel marked G at the first sale, will testify that they were present and bidders at said second sale. That the lands were sold in two parts or

parcels and that at said sale the part sold to Schutte was offered for sale as described and sold as that part of the Robertson farm lying south of the town of Bridgeton, and the part or parcel purchased by James C. Edwards, was offered as described and sold as that part of said farm lying north of the town of Bridgeton.

That the sale book of Robert C. Schnecko, who was then the sheriff of the county, and who, as such sheriff, made the sale, by an entry made thereon at the time the sale was made, will show that the part sold by him to James C. Edwards, was that part lying north of the town of Bridgeton. *That the parcels marked G and H constituted the farm known as the property of the late George Robertson, at the time of the death of said Robertson, and for the years prior thereto, and were well known in the community as such farm.*

That the parcel marked H contains a fraction over eight acres as shown by a recent survey made by August Elbring, an old, experienced, and competent surveyor.

Plaintiff is in possession of this last described parcel as devisee of J. C. Edwards.

I. This controversy hinges upon one point. The possession is in defendant and plaintiff must recover upon the strength of her legal title. The prior legal title is admitted in George Robertson and was never conveyed by him.

If the description in the partition proceedings included the land in suit, the sheriff's deed conveyed it to James C. Edwards, and if Edwards acquired title then it passed by his will to plaintiff as he devised to her all the land purchased by him at that sale.

Plaintiff objected to any and all evidence tending to prove that the two parcels marked on the plat as G and H and not including the land sued for, were known as the farm of George Robertson in that vicinity, for the reason that the description was definite and no

other evidence could be admitted to contradict, limit or explain the description given in the deed, and also asked instructions embodying the claim that this tract was included in the description of the survey found in the partition proceeding, order of sale, report and deed and must govern to the exclusion of the words "being the property known as the farm of *the late George Robertson*," and this although the land in suit may not have been included in what was generally known as the Robertson farm.

Whereas, defendants insists that it is clear from the reports of the several sales under the decree in partition that all the property had been offered for sale as described in the petition for partition and that it nowhere appeared that this thirty hundredths of an acre had ever been offered for sale.

Defendant contends that the general description of the farm known as the property of the late George Robertson refers solely to and serves simply to locate the George Robertson home farm in survey 2625; that it did not include and it was never intended to include the thirty hundredths acre in dispute no more than it intended to include the one acre tract purchased by Heidorn in said survey, or the fifty hundredths acre purchased by Brady, of the lots in said survey 2625, theretofore sold by the late George Robertson in his lifetime as indicated on the plat.

However useful the various canons of construction may have been in the past, they have all at least yielded in cases of repugnancy or apparent repugnancy to the wholesome rule that in the construction of a will, deed, or other contract of writing, effect shall be given to the whole and every part of such instrument, when that is consistent with the rules of the law and the intention of the parties. "Putting a construction upon a document means ascertaining the meaning of the signs or

words made upon it, and their relation to facts. * * * In order to ascertain the relation of the words of a document to facts, every fact may be proved to which it refers, or may probably have been intended to refer, or which identifies any person or thing mentioned in it." Stephen's Dig. Law of Evidence, art. 91, p. 146.

The proof of the facts to which the document relates does not violate the other necessary and important rule forbidding the introduction of parol evidence to vary,. limit, or contradict the written instrument.

At a glance, it will be seen that the description of the land sought to be partitioned among the heirs of George Robertson refers to facts *dehors* the petition, decree, orders of sale and sheriff's deeds. In the petition there is a general description of the land as "being *all* of the land in said survey 2625, except 20.25 acres within the limits of the town of Bridgeton, formerly Village A. Roberts," followed by another description, "and *being the farm known* as the property of the late George Robertson, deceased."

There is no lack of cases to the effect that evidence as to the extent and boundaries of the farm was admissible in order to show the relation of these terms to the subject-matter and that the intention must control whether the general words were expressed first or last, and even to transpose the description if necessary to carry the plainly manifested intention. 4 Greenleaf's Cruise on Real Prop., ch. 12, sec. 26, note 1 and cases cited; *Thomson v. Thomson,* 115 Mo. 56.

Indeed the well defined limits of this farm fall within the principle almost universally adopted that whenever natural or permanent objects are embraced in the calls of a patent or survey these have absolute control and both course and distance must yield to their influence. *Brown v. Huger,* 21 How. (U. S.), 306.

But it is insisted that the reference to the plat

fixed the description, as the land clearly lies within the boundaries of the survey. But the pleader who drew the petition for partition evidently did not so understand the language he was employing, because after using these words to describe the farm, he proceeds to describe other lots lying within that survey as follows: "*Also fifty-hundredths* (*.50*) *acre in United States survey 2625, etc.; also one acre in United States survey number 2625, bounded, etc.*" Construing all the parts of this petition together, it is too plain for discussion, that by the general description used in connection with reference to the farm *it was only intended to describe the farm*, and not the lot in dispute which never was a part of the farm and never was so known.

The subsequent proceedings show beyond all controversy that the farm was bid on and sold in separate tracts, neither of which by fair intendment included this lot. The decree in partition and the orders of sale thereunder constituted the only power of attorney possessed by the sheriff to sell and convey the lands of George Robertson for partition among his heirs. Looking to that decree and the petition upon which it is based and the various orders of sale, it is perfectly clear that the heirs of George Robertson had not asked for the sale of the Baber lot, the .30 of an acre in dispute; that the court did not decree its sale, and hence any general language used in the deed must be construed with reference to the sheriff's power to sell and convey, and when so construed, it is evident that James C. Edwards never bought or paid anything for this lot and took no title by his purchase, or deed, and consequently transmitted none to plaintiff, his devisee. The judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.