STATE ex rel. BELL et al., Relators, v. BIRD et al., Respondents.

St. Louis Court of Appeals, November 15, 1904.

1. LOCAL OPTION: Order for Election: Recitals. Under section 3027, Revised Statutes of 1899, a county court can make an order for an election to determine whether intoxicating liquors may be sold in the county, only upon a petition of one-tenth of the qualified voters of the county, and the order must recite such a petition so as to show jurisdiction in the county court to make it and render the election in pursuance of it valid.

2. ———: ———: Nunc Pro Tunc Entry. The county court could by nunc pro tunc entry after the election, but at the same term, make the record show that the order contained the proper recitals where the order as actually made at the time contained them, though the clerk erroneously omitted them in entering the order upon the record.

Original proceedings for writ of mandamus.

WRIT DENIED AND PETITION DISMISSED.

BLAND, P. J.—Ten days prior to the first day of the regular May term, 1904, of the Mississippi county court, the relators filed with the clerk of the circuit court, their petition for a license to keep a dramshop, in the city of Charleston, a city of the fourth class in said county containing over 2,000 and less than 2,500 inhabitants. At the May term, the county court took up the petition and made the following order thereon:

"In the matter of the petition of O. C. Bell, B. E. Finley and William Langston to keep a dramshop in block (1) one original town of. Charleston, the matter is taken up and the court finds that Charleston is a town of more than two thousand inhabitants; that O. C. Bell, B. E. Finley and William Langston are law-abiding, assessed, taxpaying, male citizens above the age of twenty-one years, and that said petition is signed by more than two-thirds of the assessed, taxpaying citizens and guardians of minors, of the city of Charleston, owning property in said original block one, and after due consideration the court refuses the prayer of the petitioners because of the adoption of the local option law at an election held on the eleventh day of December, 1903."

After this order was made, the petitioners presented their petition to this court asking that we, by writ of mandamus, compel the defendants as justices of the county court, to issue a license to relators to keep a dramshop as prayed for in their petition. An alternative writ was issued and served on the defendants. They made return to this writ, setting up that the court made the following order upon a proper petition.

"Now on this fourth day of November, 1903, come J. T. Heggie, John M. Rowe, C. S. Reynolds, Thomas Vowels, John A. Miller, A. J. Rushing, John Lett and others and present their petition to the court, praying the court to order an election to be held in the county at the usual voting precincts for holding any general

election for State officers, to determine whether or not spiritous and intoxicating liquors, including wine and beer, shall be sold within the limits of this Mississippi county.

"Upon examination of said petition presented and the pollbooks of the last previous general election, the court finds that said petition is signed by more than one-tenth of the qualified voters of the county who reside outside of the corporate limits of any city or town, having, at the time of such petition, a population of twenty-five hundred inhabitants or more, who are qualified to vote for members of the Legislature.

"It is therefore ordered by the court that a special election be held in this county at the usual voting precincts for holding any general election for State officers, within forty days from the fourth day of November, 1903, to-wit: on Friday, December 11, 1903, for the purpose of determining whether or not spirituous and intoxicating liquors, including wine and beer, shall be sold within the limits of this Mississippi county.

"It is further ordered by the court that notice of the said election herein ordered be given by publication in the Weekly Enterprise, a newspaper published in the county, for four consecutive weeks, the last insertion to be within ten days next before the eleventh day of December, 1903, the date of said election.

"It is further ordered that all persons voting at the said election who are against the sale of intoxicating liquors, shall have written or printed on their ballots 'against the sale of intoxicating liquors,' and all those who are in favor of the sale of such intoxicating liquors shall have written or printed on their ballots, 'for the sale of intoxicating liquors.' (Filed November 4, 1903. J. T. Heggie, County Clerk.)"

The clerk's certificates show that said election was held in said county pursuant to said order and notice and that the returns thereof were duly made and the result ascertained according to law and within five days

thereafter, the result of the election was advertised as
the law directs; that at said election there were 1153
votes against the sale of intoxicating liquors, and 1090
for the sale of intoxicating liquors, majority against
the sale 63.  The relators contend that the election was
void for the reason no valid order was ever made by
the county court for holding said election.  The parties
have stipulated that the certificates, copies of orders,
etc., made by the clerk of the county court and filed
with the proceedings, may be taken as the evidence in
the case.  From these certificates, it appears that the
petition for the election was taken up by the county
court at the November term, 1903, and that the order
that the election he held was actually made on the
fourth day of November, 1903, and the form of the
order was written out in full and approved by the county
court and by it handed to the clerk with instructions to
spread it upon the records of the proceedings of the
court for that day; that the clerk filed the order, but
misplaced it and in lieu of this approved order spread
upon the records of November 4, the following order:

"Order for special election to vote on the proposi-
tion to prohibit the sale of intoxicants in Mississippi
county, Missouri:

"On the presentation of a petition signed by over
375 citizens, qualified to vote for State and county offi-
cers, the court orders that a special election be ordered
and held at the various precincts or voting places in
said county and that the clerk give due notice of same
through the Weekly Enterprise, and it is further or-
dered that the clerk prepare the necessary pollbooks,
tally sheets and tickets, with such other blanks as will
be necessary to hold said election, and that the time
for holding said election be fixed on the eleventh day
of December, 1903, to determine whether or not intox-
icating liquors, including wine and beer, shall be sold
in the county, tickets to read, 'For the sale of intoxicat-
ing liquors.' 'Against the sale of intoxicating liquors.' "

1. It appears from the certified copy of the records of the county court, that it adjourned from November 4, to November 13, and on November 13 met and ad-. journed until November 27, and on November 27 met and adjourned until December 14, 1903. At this sitting it was discovered that the order for the election, as approved by the county court of November 4, had not been spread of record, and the clerk having found the same, the court ordered him to enter it of record as of November 4. The contention of the relators is that the order entered by the clerk of November 4, is not sufficient to authorize the holding of the election, for the reason it was not within the power of the court to make an order December 14 to relate back to November 4. Section 3027, art. 3, ch. 22, entitled "Local Option," R. S. 1899, provides that on application by petition, signed by one-tenth of the qualified voters of any county, the county court of said county shall order an election to be held in said county at the usual precincts for the holding of any general election for State officers, to take place within forty days after the reception of such petition to determine whether spirituous and intoxicating liquors, including wine and beer, shall be sold within the limits of such county outside of cities containing 2,500 inhabitants or over. The statute does not prescribe the form of the order nor state specifically or generally what fact or facts the order shall contain or recite. It requires the county court to make the order, on application by petition signed by one-tenth of the qualified voters of the county. The petition thus signed is a necessary prerequisite to the making of the order, and the court would have to find that the petition was signed by at least one-tenth of the voters before it would be authorized to make the order for the election, and this finding should be recited in the order to show that the court had jurisdiction to make it. The order entered by the clerk recites that the petition was signed by over three hundred and

seventy-five citizens and qualified voters. It does not state the exact number of said signers, nor that the number, whatever it is, constituted one-tenth of the qualified voters, and for this reason is defective.

2. On account of an oversight, the county court did not discover that its clerk had failed to enter of record the order it made, wrote out and approved on November 4 for the election, until December 14, three days after the election had been held. It is insisted that the order made December 14 was a *nunc pro tunc* order, as it purports to be, and that the county court, possessing no common law jurisdiction, is without authority to make a *nunc pro tunc* order or entry in any case. The office of a *nunc pro tunc* entry is to supply an omission in the record of actions really had but omitted through inadvertence or mistake. Bouvier's Law Dictionary. It appears to us that any court of record, whether it be a court of general or of limited jurisdiction, necessarily has authority to make its records speak the truth by correcting a mistake or inadvertence of the clerk where there is some written memorandum of what was done filed with the papers in the proceedings, or where the court's minutes or the minutes of the clerk show what order was made. If this can not be done then he court's records are at the mercy of the clerk, and parties to proceedings in the court will sometimes be deprived of their rights through a mere mistake of the clerk in entering an order of the court, and be denied the relief actually granted them by the court. The evidence clearly shows that the order enterd on December 14 was the identical order made by the court on November 4; that it was written out in full on the latter date, approved by the court, and delivered to the clerk with instructions to spread it upon the records of that day's proceedings; that the clerk marked it filed, but misplaced it and was unable to put his hand on it when he came to write up his record and for this reason substituted an order of his

own which is wholly insufficient. It would be a monstrous doctrine to hold that a mistake of this kind could nullify an actual proceeding had by the court. It further appears from the evidence that this correction of the record was made at the same term of court at which the original order was made. It is a universal doctrine, applicable to all courts of record, that they may, at the same session or term, correct their records, hence for this reason, the order entered December 14 *nunc pro tunc* may be treated as a correction of the entry made by the clerk on November 4. It is conceded that the order of December 14 contains all the recitals necessary to authorize the election, and that all other proceedings in respect to the election were in accordance with the requirements of the statute.

We deny the peremptory writ of mandamus and dismiss the petition of the relators at their cost. All concur.