## STATE OF MISSOURI, Respondent, v. M'cCORD, Appellant.

**St. Louis Court of Appeals, March 19, 1907.**

**(Opinion by Goode, J.)**

1. **JURISDICTION: Inferior Courts: Finding of Jurisdictional Facts.** When a court of inferior jurisdiction is empowered to find the facts which give it jurisdiction in a given instance, its finding of such facts is conclusive against collateral attack, and if the record does not recite a finding but shows the court exercised jurisdiction, the presumption is that it found the necessary facts to give it jurisdiction. On the other hand if the record affirmatively shows a want of the facts to give it jurisdiction in a given instance, its judgment is void.

2. ———: **Local Option: Jurisdictional Facts.** Where the record of the county court in ordering an election to determine whether the local option law should be adopted in the county under section 3027, Revised Statutes 1899, recited that a petition for such election was presented by "one-tenth of the qualified voters and taxpayers" of the county, this recital shows that the county court did not undertake to find the existence of the jurisdictional fact required by the statute that the petition should be signed by "one-tenth of the qualified voters;" the natural meaning of the language is that the court determined the petitioners should be both voters and taxpayers and that

State v. McCord.

it was sufficient if one-tenth of those who were voters and taxpayers of the county were signers of the petition, which did not necessarily mean one-tenth of those who were only voters; therefore the record shows the court did not find the fact necessary to give it jurisdiction and there is no presumption that such fact existed, hence the court was without power to order a local option election.

### (Dissenting Opinion by Nortoni, J.)

3.   ———: Inferior Courts: Presumptions.   In courts of limited jurisdiction all jurisdictional facts must appear affirmatively upon the face of the record in order to validate the action of such courts against direct attack; but in the prosecution of one for a violation of the local option law, an attack upon the validity of the order of the county court by which the election adopting the local option law was ordered, is a collateral attack and it is not necessary that the jurisdictional fact should affirmatively appear on the face of the record; where the record is silent in such cases as to jurisdictional facts, jurisdiction is presumed and no presumption will be indulged against the jurisdicton.

4.   ———: Local Option: Jurisdictional Facts.   Where the record of the order by which the county court ordered a local option election recited that the petition for the order was signed by "one-tenth of the qualified voters and taxpayers" of the county, this did not affirmatively show a want of jurisdiction, did not show that the order was made upon a petition signed by less than one-tenth of the voters.   There are several constructions of the recital by which one-tenth of the qualified voters of the county could be said to have signed the petition and in a collateral attack it should be presumed that the county court in such case acted correctly.

5.   ———: ———: Petition.   Where the petition for a local option election under section 3027, Revised Statutes 1899, prayed the court to submit to the voters the question "whether dramshop licenses shall not be granted in such county, commonly called local option," this is a sufficient compliance with the statute which provides that the election is "to determine whether or not spirituous or intoxicating liquors, including wine and beer, shall be sold."

Appeal from Christian Circuit Court.—*Hon. John T. Moore,* Judge.

REVERSED AND CERTIFIED TO SUPREME COURT.

*Harrington & Long* and *G. A. Watson* for appellant.

The finding of the court in its order for the election is fatally defective, in that it finds that the signers of the petition constitute one-tenth of the voters, and tax payers of Christian county, section 3027 requires such petitions to be signed by one-tenth of the qualified voters of the county. For ought that appears from the finding of the court, many or all the signers are nonvoting taxpayers, and may constitute one-tenth of both classes when combined, but the number of voters signing may fall far short of the required number. State ex rel. v. Bird, 108 Mo. App. 167. The said order is fatally defective as to the means by which the sufficiency of the petition was tested. The second proviso of section 3027 is as follows: "Provided that the county court shall determine the sufficiency of the petition presented by the poll books of the last previous general election." "There should have been, at least, a substantial compliance with the statute as the adoption of the local option law involved one of the most vexatious and grave questions of the times." State v. Baldwin, 109 Mo. App. 579.

*G. Purd Hays,* Prosecuting Attorney, and *Leonard Walker* for respondent.

The petition filed with the county court is sufficient to confer jurisdiction on the court. The question of dramshop license was not before the court that day nor was the question of referendum, but the petitioners asked the court to allow the qualified voters to vote on the question "commonly called local option according to section 3027, R. S. 1899, of the State of Missouri." That was the only question submitted to the voters at the election held on the 10th day of June, 1905. This court will take judicial notice that there is only one local option law in this State, namely the Act of April 5, 1887, and that section 3027 of the Revised Statutes of 1899 of

Missouri, is one of the sections of the same law. State v. Munch, 57 Mo. App. 207; State ex rel. v. St. Louis, 174 Mo. 125; Louisiana v. Anderson, 100 Mo. App. 341; State ex rel. v. Railroad, 105 Mo. App. 207; State ex rel. v. Huff, 105 Mo. App. 362; State ex rel. v. Week, 38 Mo. App. 566. The findings of the county court cannot be attacked in a collateral proceeding, but in an action to annul its record or judgment, and the finding of the county court that one-tenth of the qualified voters had signed the petition is *res adjudicata* as far as the legal status of this defendant is concerned, and the mere silence of its record is not sufficient to overthrow its jurisdiction, but the presumption of right acting must be indulged until the contrary is shown in a direct proceeding brought to annul the judgment of the county court. State v. Searcy, 39 Mo. App. 393; State v. Dugan, 110 Mo. 145; State ex rel. v. Railroad, 105 Mo. App. 207; State v. Hutton, 39 Mo. App. 413; Hadley v. Bernero, 103 Mo. App. 549; State v. Evans, 83 Mo. 322; Macey v. Stark, 116 Mo. 494; Leonard v. Sparks, 117 Mo. 108; State v. Houts, 36 Mo. App. 271; Breman v. Maute, 108 Mo. App. 339; Hathaway v. Railroad, 94 Mo. App. 343. Whether the petition filed with the county court contained the one-tenth of the qualified voters of the county or not, is conclusive against this defendant, as it is a judicial finding, and is the record of a fact judicially determined. State v. Evans, 83 Mo. 322; State ex rel. v. Weatherby, 45 Mo. 17; Jefferies v. Wright, 51 Mo. 220; Johnson v. Beazley, 65 Mo. 250; Sims v. Gray, 66 Mo. 614; Fulkerson v. Davenport, 70 Mo. 546; Scott v. Crews, 72 Mo. 263; Gray v. Boles, 74 Mo. 423; Henry v. McKerlie, 78 Mo. 416; Mechem on Pub. Officers, sec. 219; In re Rothwell, 44 Mo. App. 215; State v. Prather, 41 Mo. App. 451.

GOODE, J.—We deem it unnecessary to restate the facts of this case because they have been given accurately by our associate, in whose conclusion we are unable

State v. McCord.

to concur. We do not dissent from much of what he says concerning the law of cases of this character. It is the established rule in this State that when a court of inferior jurisdiction is entrusted by law with the duty of determining whether the facts exist authorizing it to exercise jurisdiction in a given instance, its finding of those facts is conclusive against collateral attack. Moreover, if the record in the cause does not recite a finding, but merely shows the court exercised jurisdiction, the presumption is that it found the necessary facts existed. But if the record of a court of general jurisdiction shows affirmatively that it had no jurisdiction in a given case, its judgment is void. [Smith's Lead. Cas. (8 Fed.), part 2, pp. 1113, 1114; 1 Freeman, Judgments, concluding sentences of sec. 132; McClanahan v. West, 100 Mo. 309, 320, 13 S. W. 674.] *A fortiori* is this so if the court is an inferior one. The case presented for determination is not one in which the record of the county court is silent as to the jurisdictional facts, but is one in which the court undertook to recite its finding of those facts. It recited them in these words:

"Now at this day come T. M. Maples, P. L. Little, Samuel Angus, J. A. Wasson et al., one-tenth of the qualified voters and tax payers of Christian county, Missouri, and by leave of court present their petition, praying the court to make an order submitting to the qualified voters of said county," etc.

The statute regulating local option elections prescribes that a petition for such an election shall be signed by one-tenth of the qualified voters of said county, residing outside the corporate limits of any city or town having a population of 2,500, who are qualified to vote for members of the Legislature. [R. S. 1899, sec. 3027.] No one will dispute the proposition that the presentation of a petition signed by the requisite number of petitioners of the class designated in the statute to the county court is essential to give said court jurisdiction

of the matter and warrant it to order an election. If the county court had recorded no determination of this question in the present instance, it would be presumed in favor of its jurisdiction, that it determined such a petition as the statute required had been presented. But its own record shows it made no finding of that sort. The law required a petition signed by one-tenth of the qualified voters. Instead of finding this had been done, the court found a petiton had been filed signed by one-tenth of the qualified voters and taxpayers of the county. That is to say, the county court proceeded on a wrong opinion in respect to what the law prescribed and this error of law apparent on the record, can be reviewed as in other cases. The court supposed the law required a petition to be signed by one-tenth of the qualified voters and taxpayers and not merely by one-tenth of the qualified voters; that is, that the petitioners must be taxpayers as well as voters. Now it is obvious that this theory was totally erroneous. Therefore the county court's record shows on its face that it neither found, nor undertook to find, the jurisdictional facts existed; and there can be no presumption in the face of this record that it did so find. The law is that when there is a full record of all matters going to a court's jurisdiction, the question of its jurisdiction must be determined from the record and there is no room for presumptions. [Williams v. Monroe, 125 Mo. 574, 28 S. W. 853.] In the cited case, where in a title turned on condemnation proceedings, the question of jurisdiction of the defendant in said proceedings was raised. The notice to the defendant was contained in the record and the return showed on its face that the service of the notice was void. Thereupon it was contended that presumptions in favor of service and consequent jurisdiction should be indulged, but the Supreme Court held there could be no presumption, as the matter was shown affirmatively in the proceedings (loc. cit. 587).

State v. McCord.

It is true, as stated in the opinion of our colleague, that it was within the range of possibility for the taxpayers and voters in Christian county to coincide. And the same may be said of the theory that the petition was signed by one-tenth of the qualified voters and also by one-tenth of the taxpayers. These possibilities do not go to the point nor satisfy the law. The essence of the matter is not, that it was possible for such things to be, but that it was necessary for the county court to determine that a petition signed by one-tenth of the qualified voters had been presented. There can be no presumption, in the instance of a proceeding in a court of inferior jurisdiction, that facts existed essential to an exercise of judical power. The very utmost that will be presumed is that the court found the facts existed, if the record does not show it failed so to find. Hence the case comes down to this question: Which is the fair and reasonable interpretation of the language of the recital in the judgment of the county court, that the recital shows the court determined, or shows it failed to determine that one-tenth of the qualified voters had signed the petition? Any reasonable interpretation in favor of the right exercise of jurisdction by the court ought to be adopted. [Mastin v. Stoller, 107 Mo. 317, 326, 17 S. W. 1011.] We consider that the natural and only reasonable meaning of the language of the recital in the judgment is, that the county court proceeded on the theory that under a correct view of the statutes, nobody but persons who were both qualified voters and taxpayers ought to be counted in ascertainng whether or not the petition was signed by the requisite one-tenth. This is, in fact, the requirement for some special elections which a county court may order. [R. S. 1899, sec. 5172.] We do not consider it a fair view of the language of the judgment to say it meant, either that the taxpayers and qualified voters coincided in number or that the petition was signed by one-tenth of both classes of citi-

State v. McCord.

zens. These interpretations are unreasonable because, if the court understood the statute correctly and intended to follow it and to order no election unless one-tenth of the entire number of the qualified voters of the county had petitioned, the recital regarding taxpayers was wholly superfluous and simply words inserted in the judgment for no purpose. But it ought not to be taken for granted that the county court would insert purposeless words in the record, when the natural inference from what was said is that the court regarded the signatures of taxpayers as essential. A leading canon for the interpretation of documents or laws is that force must be given, when possible, to all their words. [Calloway v. Henderson, 130 Mo. 77, 86, 32 S. W. 34.] We hold the recital shows the court proceeded on a false theory of law and did not determine the fact essential to give it jurisdiction. As it did not determine that fact, and there is no presumption in the case of an inferior tribunal, that the fact existed, it must be ruled the county court had no power to order the election. It is worthy of remark, too, that said court was proceeding in the matter under special and statutory authority, and not according to the course of the common law; a circumstance which, according to many authorities, would affect the presumptions to be indulged in regard to the right exercise of jurisdiction.

The judgment is reversed. *Bland, P. J.,* concurs.

### DISSENTING OPINION.

NORTONI, J.—The defendant was convicted on a charge of selling intoxicating liquors in violation of the local option law, and after unsuccessful motions for new trial and in arrest of judgment, appeals to this court. There is no question raised with respect to the indictment, trial and conviction other than challenging the adoption of the local option law. The defendant maintains here as he did in the circuit court, that the local

option law is not in force in Christian county, and in support of this contention, points us to what he terms several irregularities in the antecedent proceedings leading up to the publication of notice declaring the same to have been adopted, etc. We have examined each of the questions presented. There are but two of them, however, which merit discussion in the opinion, and we will therefore give an opinion on these two only, without commenting upon the others.

It appears that on the 4th day of May, 1905, a petition was presented to the county court praying in substance that the proposition of adopting the local option law be submitted to the voters of that county. Upon an examination in this behalf, the county court found such petition to have been signed by "one-tenth of the qualified voters and taxpayers of Christian county, Missouri" and upon such finding, ordered an election for July 10th, "to determine the proposition whether or not spirituous and intoxicating liquors, including wine and beer, should be sold" in that county and looking to the adoption of the local option law, as found in secton 3027-3035 inclusive, R. S. 1899. The election was held, a majority of the votes cast were in favor of the propositon stated, and in due time the county court published the result, in accord with section 3031, R. S. 1899, which operated to put the provisions of the law in force provided the requisite antecedent steps were had in accordance with the statute. The defendant argues that the judgment and order of the county court of date May 4th, by which it submitted the proposition to adopt the law and ordered the election thereon, is void for the reason that it appears on the face thereof that such order and judgment are not predicated upon the petition of one-tenth of the qualified voters of such county, as contemplated in section 3027, supra. The provisions of the statute pertinent here are as follows:

"Upon application by petition, signed by one-tenth

of the qualified voters of any county who shall reside outside of the corporate limits of any city or town having at the time of such petition, a population of twenty-five hundred inhabitants or more, who are qualified to vote for members of the Legislature, in any county in this State, the county court of such county shall order an election to be held in such county at the usual voting precincts for holding any general election for State officers, to take place within forty days after the reception of such petition, to determine whether or not spirituous and intoxicating liquors, including wine and beer, shall be sold within the limits of such county lying outside of such corporate limits of such city or town."

(The record shows there is no city or town in Christian county having a population of 2,500 inhabitants or more. This is an unimportant circumstance, however.) Now it is manifest from the provisions quoted that it is only upon presentation of a petition signed by one-tenth of the qualified voters, as indicated, that the county court is authorized to submit the proposition to the voters and order the election contemplated in the local option statutes. In other words, the presentation to the county court of the petition signed by one-tenth of the qualified voters is the fact which confers jurisdiction upon that tribunal and until such petition is presented, the court is without any authority whatever over the subject-matter of the proposed local option. [State ex rel. v. Bird, 108 Mo. App. 163, 83 S. W. 284.] And indeed it is very true as a proposition pertaining to courts of limited and inferior jurisdiction that all jurisdictional facts must appear affirmatively upon the face of the record in order to validate and sustain the action of such courts against a direct assault. Or, in other words, when the proceedings of such courts are subjected to direct attack, the law will not presume in their favor. Nothing will be considered to be within their jurisdiction by presumption of law, but, on the contrary,

in such cases the jurisdiction must affirmatively appear by their record. [State ex rel. v. County Court of Cooper County, 66 Mo. App. 96; Rouse v. Wood, 57 Mo. App. 560.] Wherefore, it is argued by defendant that inasmuch as the county court record discloses that it found such petition was signed by "one-tenth of the qualified voters and taxpayers" instead of one-tenth of the qualified voters, as contemplated by the statutes, it is manifest therefrom that it had no jurisdiction in the first instance to order an election and therefore the order of the court predicated upon such petition and all subsequent acts thereunder are void and of no force. In response to this argument, the thought is suggested, however, that in proceedings such as this, where the validity of the order of the county court is attacked collaterally only, the presumption of correct action which attends all official conduct must be indulged with respect to the order of the county court in that behalf, and will prevail. Indeed, there is a marked distinction with respect to these matters pertaining to the jurisdiction of such courts when subjected to direct and collateral attack. While it is true, as stated, that jurisdictional facts must appear on the face of the record, when the proceeding is subjected to a direct attack, the principle finds its limitation there, and is without influence in those cases where the record is assailed collaterally, as here. And it is the law that where a court of limited jurisdiction is required to find the existence of a fact *in pais* in order to authorize its further procedure in a given instance, and its records are silent as to whether or not such fact was found to exist, the law will not presume, in a collateral proceeding, for the purpose of overthrowing its jurisdiction and undoing such procedure, that such fact did not exist. This follows as a necessary correlative of the principle which presumes correct conduct generally until the contrary is made to appear. The universal presumption of right acting attending official bodies always,

in the absence of a showing to the contrary, will therefore prevail in favor of the county court's order, and it will not be presumed that such facts did not exist and were not made to appear to it, until the contrary is established in a direct proceeding. This has been pointedly decided in local option and other cases. [See State v. Searcy, 39 Mo. App. 393; State v. Searcy, 46 Mo. App. 421-427; State v. Searcy, 111 Mo. 236, 20 S. W. 186; State ex rel. v. Weeks, 38 Mo. App. 566; State v. Dugan, 110 Mo. 138, 19 S. W. 195; State v. Evans, 83 Mo. 319.] In Leonard v. Sparks, 117 Mo. 103, 22 S. W. 899, the cases are reviewed and the doctrine ably presented. See also the well-considered case of Hadley v. Bernero, 103 Mo. App. 549, 78 S. W. 64. It is obvious that were the record of the county court entirely silent on the question as to whether or not one-tenth of the qualified voters signed the petition, the case would fall within the influence of the principle last stated, and the presumption of right acting attending the official conduct of the county court would prevail to the extent stated, and in this collateral proceeding, it would not be presumed that such court had not found the fact of one-tenth of the qualified voters having signed the petition, before it assumed to proceed further and order an election, which it was authorized to order only upon finding that such petition was so signed, for we cannot, from the silence of the record, presume that the court had acted upon an insufficient petition and contrary to the provisions of the statute. But such is not the case before the court. The record is not silent on the question. On the contrary, it recites on its face what the court did find with respect to those persons who had signed the petition, and its recitals in this behalf import, as do records generally, absolute verity. It recited that the court found the petition to have been signed by "one-tenth of the qualified voters and taxpayers." The court thus having recited upon its records what it did find

with respect to this jurisdictional fact, does the recital contained in the order show on its face that it is void for want of jurisdiction, or, to state the question more pointedly, does the record show on its face that the court predicated its order upon a petition signed by less than one-tenth of the qualified voters? If the whole record does so show, then the court was without authority to order the election and all subsequent proceedings had under such order are void and of no force or effect, for it is the law that if the whole record shows affirmatively on its face that the court had no jurisdiction over the subject-matter, the judgment and order of the court and all subsequent proceedings thereunder are void, and as such, open to successful attack in a collateral proceeding. [Adams v. Coweles, 95 Mo. 501, 8 S. W. 711; Hope v. Blair, 105 Mo. 85, 16 S. W. 595; Becker v. Lidwell, 63 Mo. App. 586.] The court found the petition to have been signed by one-tenth of the qualified voters and taxpayers. Now, while it is true that ordinarily there are many qualified voters in a county who are not taxpayers, yet we do not know this to be true of Christian or any other county. It is not a fact of which the courts are judicially cognizant. The converse of the proposition may be true; it is not impossible although it may be improbable; and it may have been that every qualified voter of that county was a taxpayer and every taxpayer a qualified voter, and therefore the two classes of qualified voters and taxpayers be identical. If such be the truth with respect to the matter, the order of the county court stated a truth and the petition was signed by one-tenth of the qualified voters, and was also signed by one-tenth of the taxpayers. So signed, it would certainly be good. Again, admitting the class denominated qualified voters to be several hundred less than the class denominated taxpayers, as is usually the case, inasmuch as many of the female residents of the county who are not qualified voters under our laws, are taxpayers, it

may have been that the petition contained the signatures of one-tenth of the qualified voters and enough more of the same class to also constitute one-tenth of the tax-payers, and upon this hypothesis, it would be sufficient to support the jurisdiction of the county court to submit the question and order an election. It must be remembered that a proper application of the principle respecting the presumption to be indulged in favor of correct action by the county court, on this fact *in pais* in this collateral proceeding, precludes this and every other court from pronouncing judgment against the sufficiency of the county court's record on the question presented *unless it is affirmatively shown on the face of the record that the county court did not have jurisdiction,* and with the case in this posture, we are not at liberty to presume for the purpose of overthrowing jurisdiction, that one tenth of the qualified voters and taxpayers are not identical nor that the county court did not find the petition to have been signed by one-tenth of each class mentioned, even though the classes are not identical. While it is our duty to give to the words "one-tenth of the qualified voters and taxpayers" their usual and ordinary significance, we are persuaded that those words as here employed may bear several constructions which are not unnatural to say the least, and the mere fact that they are susceptible of several meanings in this connection is not sufficient to overthrow the jurisdiction of the county court, for to do so, it must affirmatively appear on the face of the county court record that the court did not have jurisdiction, or in other words, that the petition was found not signed by one-tenth of the qualified voters. Now the words "qualified voters and taxpayers" are ambiguous indeed, and it is impossible to determine therefrom just what per cent of the legal voters and just what per cent of the taxpayers were found to have signed, provided less than one-tenth of the voters signed the petition, and the deficiency was made up of non-

voting taxpayers. But this does not appear nor does it affirmatively appear on the face of the record that less than one-tenth of the qualified voters had signed the petition; or in other words, the county court may have found of that larger class of voters and taxpayers combined, one-tenth petitioned, and that this one-tenth of the larger class was made up of one-twentieth of the smaller class of qualified voters and one-twentieth of the other class of taxpayers, yet such does not affirmatively appear and unless it does appear that the county court found the petition to have been signed by less than one-tenth of the qualified voters, the conclusive presumption of law in this collateral proceeding sustains the jurisdiction of the county court and removes the case from within the influence of the principle sought to be invoked against it. For aught we know, although it may be improbable, one-tenth of the qualified voters and one-tenth of the taxpayers of Christian county may at that time have been identical. The record shows nothing to the contrary and we have no right to presume in this case in order to overthrow the jurisdiction; or, as said before, the county court may have found the petition to have been signed by one-tenth of the qualified voters of Christian county, *each and every one of whom was a taxpayer as well as a qualified voter.* Under such finding, the petitioners would be both qualified voters and taxpayers; and if this hypothesis be true, the fact that the court so found and recited in its record in substance that such qualified voters were also taxpayers, could avail nothing against the jurisdiction of the court inasmuch as the words "and taxpayers" could be stricken therefrom, as surplusage, such additional qualification not being required by the statute. We are not authorized to, nor do we favor overthrowing the will of the majority of the voters of that county, expressed at the polls, in adopting the local option law, by presuming, either, first, that the county court did not find the peti-

tion to have been signed by one-tenth of the qualified voters who were also taxpayers, which indeed is quite probable as a matter of fact; or by presuming, second, that the qualified voters and taxpayers of the county were not identical, even though the last proposition be quite improbable. While it is improbable, it is not impossible and it should not be presumed for the purpose of overthrowing the jurisdiction in this collateral proceeding. The assignment of error should therefore be overruled.

2. The petition addressed and presented to the county court on which the order for the local option election was based, prayed that court "to submit to the voters of said Christian county a proposition to vote on the question whether dramshop licenses shall not be granted in such county, commonly called local option, according to section 3027, R. S. 1899 of Missouri." Section 3027 referred to in the petition provides that the proposition to be voted upon at such election is "to determine whether or not spirituous and intoxicating liquors, including wine and beer, shall be sold." It is insisted by defendant that the petition was insufficient to authorize the county court to take cognizance of the matter and to support the order for an election, inasmuch as it did not recite the proposition at least substantially as in the statute provided, and that it prayed the court to submit the proposition "whether dramshop licenses shall not be granted," etc. It is true that the petition is not as artistically drawn as it might have been and that it did refer to the dramshop licenses as quoted, but it is also true that it qualified or explained such reference to dramshop licenses, etc., by adding the words: "commonly called local option, according to section 3027, R. S. 1899, of the State of Missouri." It is very well settled that the courts of this State take judicial notice that there is but one local option law in Missouri and that its provisions are to prohibit the sale

of intoxicating liquors by dramshop keepers in counties where it is adopted and therefore the proposition of its adoption would necessarily involve the proposition whether dramshop licenses should not be granted. [State v. Munch, 57 Mo. App. 207.] And such law was properly referred to by the employment of the words "local option law," and reference to section 3027, supra, which is the first and principal section of the act pertaining to the submission of the proposition of its adoption to the voters, etc. It is manifest from the language of the petition, reference to the local option law and express mention of section 3027, supra, that the petition sought and prayed the court to submit the proposition "to determine whether intoxicating liquors, including wine and beer, should be sold," as contemplated by the section of the statute referred to. [State ex rel. v. Weeks, 38 Mo. App. 572; State v. Smith, 38 Mo. App. 618.] That the county court so understood and treated it, is obvious from the record or recital in its order made on that day by which it submitted the proposition in the identical language of the statute mentioned. The petition is sufficient and this assignment should be overruled. Finding no reversible error in the record, I am of the opinion the judgment should be affirmed.

The above and foregoing was prepared and tendered by me as a statement of the case and the opinion of the court on the several questions arising on the record. My associates entertaining another view, as indicated in the opinion of the court given by Judge GOODE, declined to concur therein, therefore the same is most respectfully filed as the reasons actuating my dissent.

I deem the majority opinion in this case and the judgment of the court herein to be in conflict with the principles announced in the case of State v. Searcy, 111 Mo. 236, 20 S. W. 186, and State v. Dugan, 110 Mo. 138, 19 S. W. 195, decided by our Supreme Court and therefore respectfully request that the cause be certified to the Supreme Court for final determination.